UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURENCE FAULKS,

    Plaintiff,

v.

WELLS FARGO & COMPANY, et al.,

    Defendants.

Case No. 13-cv-02871-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 19

## INTRODUCTION

Pending before the Court is Defendant Wells Fargo Bank N.A.'s[1] Motion to Dismiss Plaintiff Laurence Faulks' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 19. Plaintiff filed an Opposition (Dkt. No. 25) and Wells Fargo filed a Reply (Dkt. No. 28). The Court finds this motion suitable for disposition without oral argument. Civ. L.R. 7-1(b). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Wells Fargo's Motion for the reasons set forth below.

## BACKGROUND

On July 3, 2007, Plaintiff borrowed $525,000.00 from World Savings Bank, FSB, secured by a deed of trust recorded against 25 Cameo Way, San Francisco, California 94131 (the "Property").[2] Req. for Jud. Not. ("RJN") Ex. A, Dkt. No. 20. In January 2008, World Savings

---

[1] Wells Fargo Bank N.A. is the successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage FSB, formerly known as World Savings Bank, FSB (erroneously named in this case as "Wells Fargo & Company, Wells Fargo N.A., Wells Fargo Mortgage").

[2] Along with its Motion to Dismiss, Wells Fargo requested that the Court take judicial notice of the following documents: (1) Deed of Trust dated July 3, 2007, signed by Plaintiff and recorded in the Official Records of the San Francisco County Recorder's Office on July 12, 2007, as Document No. 2007-I416378-00 (Ex. A); (2) Certificate of Corporate Existence dated April 21, 2006, issued by the Office of Thrift Supervision, Department of the Treasury ("OTS"), certifying that World Savings Bank, FSB, was a federal savings bank (Ex. B); (3) Letter dated November 19, 2007, on the letterhead of the OTS authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB (Ex. C); (4) Charter of Wachovia Mortgage, FSB, dated December 31,

1   Bank, FSB changed its name to Wachovia Mortgage, FSB, and later changed its name to Wells
2   Fargo Bank Southwest, N.A., before merging into Wells Fargo Bank, N.A. in November 2009.
3   RJN Exs. B-F.

4       Plaintiff alleges that at some time in 2010 he was unable to make the monthly payments on
5   his loan because he suffered a serious illness and lost his job.  FAC ¶ 3.  He requested a loan
6   modification through the federal Home Affordable Mortgage Program ("HAMP") from Wells
7   Fargo starting in 2010 up to and including May 17, 2012.  *Id*.  Plaintiff alleges that Wells Fargo
8   promised that so long as it was considering a loan modification, no foreclosure sale would take
9   place.  *Id.* ¶ 4.  On October 10, 2011, Wells Fargo provided a letter to Plaintiff informing him that
10  "no foreclosure sale will be conducted and you will not lose your home while the loan is evaluated
11  for HAMP."  *Id.*  The letter also indicated that Plaintiff would be informed in writing of a denial
12  and given thirty days thereafter before the property would be foreclosed.  *Id.*

13      From early 2010 until May 2012, Plaintiff repeatedly sent documents as requested by
14  Wells Fargo, often multiple times, but on more than one occasion it sent him written notice that
15  his application for a loan modification was deemed withdrawn because he "did not provide the
16  documents requested."  *Id.* ¶ 5.  Wells Fargo also sent letters (February 25, 2010, April 27, 2010,
17  and October 11, 2011) stating his loan application had been denied for lack of financial
18  qualification.  *Id.*  However, he alleges that Wells Fargo never told him that his application had

---

2007, reflecting in Section 4 that it is subject to HOLA and the OTS (Ex. D); (5) Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A. (Ex. E); (6) Printout from the website of the Federal Deposit Insurance Corporation dated September 2, 2010, showing the history of Wachovia Mortgage, FSB (Ex. F); (7) Notice of Default and Election to Sell Under Deed Of Trust dated August 18, 2011 and recorded in the Official Records of the San Francisco County Recorder's Office on August 22, 2011 as DOC-2011-J248446-00 (Ex. G); (8) Notice of Trustee's Sale dated March 26, 2012 and recorded in the Official Records of the San Francisco County Recorder's Office on March 28, 2012, as DOC-2012-J382400-00 (Ex. H); and (9) Trustee's Deed Upon Sale dated May 21, 2012 and recorded on the Official Records of the San Francisco County Recorder's Office on May 31, 2012 as DOC-2012-J424312-00 (Ex. I).  Plaintiff filed no objections to Wells Fargo's request.  Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of Exhibits A and G-I attached to Wells Fargo's request because they are matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  With respect to Exhibits B through F, judicial notice is appropriate because those documents reflect the official acts of the executive branch of the United States, pursuant to Rule 201(b)(2).  *Preciado v. Wells Fargo Home Mortg.*, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013) (citations omitted).

1  been finally denied or that a sale would take place.  *Id.*  The last letter stating his loan modification
2  request was considered "withdrawn" was February 9, 2012.  *Id.*  On February 13, 2012, Wells
3  Fargo wrote Plaintiff and suggested several alternatives to foreclosure if he contacted them by
4  March 14, 2012.  *Id.*  Plaintiff called Wells Fargo several times, but had to leave messages because
5  no person who could help in any way answered.  *Id.*

6  Plaintiff also sought the assistance of Consumer Credit Counseling Service of San
7  Francisco ("CCC") because he was advised by Justin Saavedra, a Wells Fargo Homeowner
8  Preservation Specialist, to use CCC to communicate with Wells Fargo using the services of CCC.
9  *Id.*  On February 20, 2012, Mr. Saavedra informed Plaintiff that he understood he was having
10  trouble contacting Wells Fargo but that he would help in "getting the ball rolling on the process"
11  of getting Plaintiff's loan modification application "reinstated."  *Id.* ¶ 7.  On March 5, CCC
12  emailed a "complete modification docs package" to Wells Fargo because Wells Fargo was
13  actively considering Plaintiff's loan modification and needed the documents again.  *Id.*  As late as
14  May 15, 2012 a Wells Fargo employee specifically asked CCC for additional documents to help
15  evaluate Plaintiff's loan modification request.  *Id.* ¶ 10.  Plaintiff alleges that Mr. Saavedra's
16  representations led him to believe that Wells Fargo was still considering a HAMP loan
17  modification, and Wells Fargo's conduct led him to believe that it was still considering the HAMP
18  modification request up to and including May 17, 2012.  *Id.* ¶ 7.

19  Plaintiff defaulted on the loan and a notice of default was recorded with the San Francisco
20  Assessor-Recorder on August 22, 2011.  RJN Ex. G.  A notice of trustee's sale was recorded on
21  March 28, 2012, scheduling the foreclosure sale for April 16, 2012.  *Id.* Ex. H.  The property was
22  sold to a third party at a public auction on May 17, 2012.  *Id.* Ex. I.

23  Plaintiff filed his initial Complaint on June 21, 2013 (Dkt. No. 1), and filed his FAC on
24  August 29, 2013.  He alleges that he lost at least $500,000 in profits that he would have made had
25  Wells Fargo complied with its alleged promises and representations.  FAC ¶ 12.  He also incurred
26  moving expenses and legal expenses defending against his eviction.  *Id.*  Based on these
27  allegations, Plaintiff asserts four state law claims: (1) promissory estoppel; (2) fraud; (3) negligent
28  misrepresentation; and (4) breach of contract.  *Id.* ¶¶ 13-26.  He seeks damages of at least

3

1    $600,000 and attorneys' fees and costs.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## DISCUSSION

**A.      Preemption under the Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.***

In its Motion, Wells Fargo argues that all four of Plaintiff's state law claims are preempted by HOLA. Mot. at 11-15. In response, Plaintiff argues that HOLA does not apply to Wells Fargo because it is not a federal savings association. Opp'n at 9-10. Plaintiff further argues that HOLA does not preempt claims based on false representations. *Id.* at 10-11.

HOLA created the Office of Thrift Supervision ("OTS") to administer the statute, and "it provided the OTS with 'plenary authority' to promulgate regulations involving the operation of federal savings associations." *State Farm Bank v. Reardon*, 539 F.3d 336, 342 (6th Cir. 2008). Under one of those regulations, 12 C.F.R. § 560.2, OTS makes clear that it "occupies the entire field of lending regulation for federal savings associations," leaving no room for conflicting state laws. The regulation goes on to provide a non-exhaustive list of examples of state laws that are expressly preempted. *See* 12 C.F.R. § 560.2(b). If the state law is one of the enumerated types, "the analysis will end there; the law is preempted." *Silvas v. E Trade Mortgage Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). If it is not, then the court is to determine "whether the law affects lending." *Id.* (internal quotation marks omitted).

The Ninth Circuit has not addressed the issue of whether HOLA applies to Wells Fargo, given that it is not a federal savings association. Courts have held that a successor-in-interest may properly assert HOLA preemption even if the successor is not a federal savings association. *Appling v. Wachovia Mortgage, FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010) ("although Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by HOLA because Plaintiff's loan originated with a federal savings bank") (citation omitted).

"Other district courts have more recently questioned the logic of allowing a successor party

such as Wells Fargo to assert HOLA preemption, especially when the wrongful conduct alleged was done after the federal savings association or bank ceased to exist." *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, 2014 WL 890016, at *7 (N.D. Cal. Mar. 3, 2014) (collecting cases). "Those courts usually have applied HOLA preemption only to conduct occurring before the loan changed hands from the federal savings association or bank to the entity not governed by HOLA." *Id.* (collecting cases). "This is because 'preemption is not some sort of asset that can be bargained, sold, or transferred....'" *Id.* (quoting *Gerber v. Wells Fargo Bank, N.A.*, 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012). As one court explained:

> The important consideration is the nature of the alleged claims that are the subject of the suit. The governing laws would be those applicable to [World Savings Bank] at the time the alleged misconduct occurred. Wells Fargo, being the successor corporation to Wachovia Mortgage and thus [World Savings Bank], succeeds to those liabilities, whatever the governing law at that time may be. Therefore, [World Savings Bank's] conduct before its merger with Wells Fargo on November 1, 2009 would be governed by HOLA where appropriate, while Wells Fargo's own conduct after that date would not.

*Rhue v. Wells Fargo Home Mortgage, Inc.*, 2012 WL 8303189, at *3 (C.D. Cal. Nov. 27, 2012); *see also Rijhwani*, 2014 WL 890016, at *7.

The Court finds this reasoning persuasive, and in light of there being no binding Ninth Circuit authority, the Court applies it to this action. Here, all of the wrongful conduct alleged by Plaintiff was done by Wells Fargo and occurred from 2010 to 2012, well after Wachovia merged into Wells Fargo. This means that Wells Fargo, which is not a federal savings association or bank, may not assert HOLA preemption in this action.

**B.      Promissory Estoppel**

In his First Cause of Action for Promissory Estoppel, Plaintiff alleges that Wells Fargo made promises to induce him not to take other action available to him, such as a bankruptcy petition or sale of the property, and that Wells Fargo knew or should have known that its promises would induce him not to pursue these other remedies. FAC ¶ 14. Plaintiff further alleges that he relied on Wells Fargo's promises not to sell the house at a foreclosure sale while loan modifications or other relief was being considered, and that he had no reason to believe that Wells

1  Fargo would not keep its promises. *Id.* ¶ 15. He maintains it was foreseeable by Wells Fargo that
2  Plaintiff would rely on its promise not to sell the property until it had denied his requests and its
3  review of his eligibility for relief from foreclosure was complete. *Id.*

4  In its Motion, Wells Fargo argues that Plaintiff's promissory estoppel claim must fail
5  because he admits he was "formally informed in writing" of the denial of his loan modification
6  application on October 11, 2011, when Wells Fargo sent a letter "stating his loan application had
7  been denied for lack of financial qualification." Mot. at 3 (quoting FAC ¶ 5). Wells Fargo
8  maintains that Plaintiff's pending loan modification application was "denied," not "withdrawn,"
9  and Plaintiff does not allege that the denial was appealed, or allege any other facts that might
10 suggest the same loan modification application under review on October 10, 2011 was still under
11 consideration after October 11, 2011. *Id.* Thus, if Wells Fargo assumed any obligation by virtue
12 of the October 10, 2011 letter, that obligation was fully performed. *Id.*

13 In response, Plaintiff argues that, despite letters saying the modification request had been
14 denied or considered withdrawn, it was neither. Opp'n at 2. Specifically, he argues that "after any
15 and all of those letters, in fact, Wells Fargo was still evaluating the modification request – a fact it
16 led Plaintiff to believe and which was in fact true." *Id.*

17 Under California law, "[a] promise which the promisor should reasonably expect to induce
18 action or forbearance on the part of the promisee or a third person and which does induce such
19 action or forbearance is binding if injustice can be avoided only by enforcement of the promise."
20 *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal.4th 305, 310 (2000); *see*
21 *also Platt Pacific, Inc. v. Andelson*, 6 Cal.4th 307, 320 (1993) ("Under the doctrine of promissory
22 estoppel, the promise by one party and the resulting detrimental reliance on that promise by
23 another party operate as a substitute for consideration that may make the modification enforceable
24 to the extent necessary to prevent injustice."). "The elements of promissory estoppel are (1) a
25 clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of
26 the obligation assumed and not performed." *Moncada v. West Coast Quartz Corp.*, 221 Cal. App.
27 4th 768, 780 (2013) (internal quotation marks omitted). The alleged promise must be "definite
28 enough that a court can determine the scope of the duty[,] and the limits of performance must be

sufficiently defined to provide a rational basis for the assessment of damages." *Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1045 (2010) (internal quotation marks omitted).

Here, Plaintiff alleges that Wells Fargo made a promise that, so long as it was considering a loan modification, no foreclosure sale would take place. FAC ¶ 4. Plaintiff further alleges that Wells Fargo's Homeowner Preservation Specialist, Justin Saavedra, with knowledge of the fact Wells Fargo had written that the modification was either denied or deemed withdrawn, told Plaintiff that he would help and get the loan modification request reinstated. FAC ¶ 7. He also alleges that Wells Fargo, within a few days of Saavedra's promise, requested that CCC send "a complete modification docs package" to Wells Fargo "because Wells Fargo was still actively considering plaintiff's loan modification." *Id.* The Court finds Wells Fargo's promise is clear and unambiguous in its terms. *Izsak*, 2014 WL 1478711, at *4 (finding plaintiff's allegation that a Wells Fargo representative promised him that Wells Fargo would not foreclose on his property or report him late to credit agencies while his loan modification application was under review sufficient for purposes of pleading promissory estoppel).

Plaintiff further alleges that he relied on Mr. Saavedra's and Wells Fargo's promises by refraining from obtaining other alternatives to remedy his situation, such as sale of the property. FAC ¶ 15. This is sufficient to allege reasonable and foreseeable reliance. *Rockridge Trust v. Wells Fargo N.A.*, 2014 WL 688124, at *16 (N.D. Cal. Feb. 19, 2014) (plaintiffs properly alleged that they relied on bank representative's promise to postpone the trustee's sale, and they were damaged by choosing to forego opportunities such as sale of the property or injunctive relief through judicial action to stop the sale). Moreover, Plaintiff's reliance caused substantial detriment – it is undisputed that the property was sold to a third party at a public auction. *Id.* Accordingly, Plaintiff has adequately pled a cause of action for promissory estoppel and, therefore, the Court DENIES Wells Fargo's Motion to Dismiss this claim.

**C.     Fraud**

In his Second Cause of Action for Fraud, Plaintiff alleges that Wells Fargo represented that he need not be concerned with a foreclosure sale occurring while his loan modification was being considered, and that he would have at least thirty days after the denial before any sale could take

8

place. FAC ¶ 18. He further alleges that Wells Fargo made such statements recklessly without regard for their truth, and that he was rendered homeless by Wells Fargo's actions. *Id.* ¶¶ 19-20. Wells Fargo argues that Plaintiff's claim fails to meet the specificity requirements of Federal Rule of Civil Procedure 9(b). Mot. at 5-6.

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Rule 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule 9(b)'s heightened pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Yess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.") (internal quotation marks omitted). A Rule 9(b) pleading must ensure that "'allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

Here, while the section of the FAC devoted to the fraud claim does not provide the specificity required by Rule 9(b), Plaintiff's allegations in the FAC as a whole have sufficient particularity to meet the rule's requirements. Plaintiff identifies the "who," Wells Fargo representative Justin Saavedra and the representative that wrote the October 10, 2011 letter; the "when," from early 2010 until May 2012; the "where," by letter, email, and over the phone; and the "what" and "how," the specific representations that were made to him by Wells Fargo and Mr. Saavedra and an explanation of how they were false. FAC ¶¶ 4-10. These allegations satisfy the particularity requirements of Rule 9(b). *See Izsak v. Wells Fargo Bank, N.A.*, 2014 WL 1478711, at *3 (N.D. Cal. Apr. 14, 2014) (finding that the plaintiff pled fraud with sufficient specificity where the plaintiff alleged that a named Wells Fargo representative suggested a loan modification

over the phone in June 2011, and provided an explanation of how this representation was false); *Rockridge Trust*, 2014 WL 688124, at *17-18. Accordingly, Wells Fargo's Motion is DENIED as to Plaintiff's fraud claim.

### D. Negligent Misrepresentation

In his Third Cause of Action for Negligent Misrepresentation, Plaintiff alleges that Wells Fargo represented that he need not be concerned with a foreclosure sale occurring while his loan modification was being considered, and that he would be notified in writing of its decision. FAC ¶ 22. Plaintiff further alleges that Wells Fargo should have known that the representation was false. *Id.* ¶ 23. In its Motion, Wells Fargo argues that Plaintiff's allegations do not support a duty of care as required by such a claim. Mot. at 7.

Under California law, "[t]he elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'" *Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc.*, 171 Cal. App. 4th 35, 50 (2009) (citation omitted). "It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011).

As discussed above, the Court finds that Plaintiff has met the requirements of Rule 9(b). However, in order to state a claim for negligent misrepresentation, Plaintiff must allege the existence of a duty of care between himself and Wells Fargo. *Ditto v. McCurdy*, 510 F.3d 1070, 1078 (9th Cir. 2007). "The legal duty of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated, or (b) an affirmative duty where the person occupies a particular relationship to others." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016-17 (1997). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004). As a general rule, under

California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted).

In California, the test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* at 1098.

District courts in California are divided on the question of when lenders owe a duty of care to borrowers in the context of the submission of and negotiations related to loan modification applications and foreclosure proceedings. Relying on *Nymark*, a number of cases have held that a financial institution does not owe a borrower a duty of care because the loan modification process is a traditional money lending activity. *See Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012) (compiling cases); *Rockridge Trust v. Wells Fargo, N.A.*, 2013 WL 5428722, at *36 (N.D. Cal. Sept. 25, 2013); *DeLeon v. Wells Fargo Bank N.A.*, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011); *Ottolini v. Bank of America*, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011); *Coppes v. Wachovia Mortg. Corp.*, 2011 WL 1402878, at *7 (E.D. Cal. Apr. 13, 2011) (Plaintiffs contradictory allegations that Defendant denied a loan modification application and that Defendant granted a loan modification that caused Plaintiff injury did not establish a duty because they did not plausibly suggest that Defendant actively participated in the financed enterprise beyond the domain of the usual money lender).

Other courts have concluded that a financial institution has exceeded its role as a money lender once it accepts an application for a loan modification, and is thus subject to a standard of reasonable care in handling the application. *See Rijhwani*, 2014 WL 890016, at *16; *Garcia v. Ocwen Loan Serv., LLC*, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010); *Trant v. Wells*

11

*Fargo Bank, N.A.*, 2012 WL 2871642, at *6-7 (S.D. Cal. July 12, 2012); *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451, at *7 (N.D. Cal. Sep. 11, 2013); *Avila v. Wells Fargo Bank*, 2012 WL 2953117, at *12–*14 (N.D. Cal. July 19, 2012); *Chancellor v. One West Bank*, 2012 WL 1868750, at *13-14 (N.D. Cal. May 22, 2012).

The Court finds this second line of cases persuasive. And, at this stage in the proceedings, the Court is inclined to find that Wells Fargo owed Plaintiff a duty of care in processing his loan modification application. In reviewing the *Nymark* factors, the Court finds that at least five of the six weigh in Plaintiff's favor. The loan modification was intended to affect Plaintiff – it would have reduced his mortgage payment. The potential harm to Plaintiff from mishandling the application processing was also foreseeable: the loss of an opportunity to keep his home was the inevitable outcome. Although there was no guarantee the modification would be granted, Plaintiff alleges that the mishandling of the documents deprived him of the possibility of obtaining the requested relief. The injury to Plaintiff is certain, in that he lost the opportunity to modify his loan. There is also a close connection between Wells Fargo's conduct and any injury actually suffered, because, to the extent Plaintiff otherwise qualified and would have been granted a modification, Wells Fargo's alleged conduct precluded the loan modification application from being properly processed. Finally, "[t]he existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis." *Garcia*, 2010 WL 1881098, at *3 (citing Cal. Civ. Code § 2923.6).

In sum, taking Plaintiff's allegations as true, the Court finds that Wells Fargo's role went beyond that of a "conventional" lender that relates to the "mere" lending of money. *Nymark*, 231 Cal. App. 3d at 1095-96. Accordingly, at this stage in the pleadings, the Court finds that Plaintiff has established a duty of care, and the Court therefore DENIES Wells Fargo's Motion as to Plaintiff's negligence claim.

**E.     Breach of Contract**

In his Fourth Cause of Action for Breach of Contract, Plaintiff alleges that he complied with all of Wells Fargo's demands so as to allow him a loan modification under HAMP if he met

the criteria for such a modification, but Wells breached the agreement by proceeding to a foreclosure sale while a modification was pending. FAC ¶¶ 25-26. In its Motion, Wells Fargo argues that this claim must fail because Plaintiff does not identify a contract. Mot. at 10. Plaintiff does not address Wells Fargo's argument in his Opposition.

The elements of a cause of action for breach of contract are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Here, Plaintiff's breach of contract claim is based on representations by Wells Fargo that it would not proceed with the foreclosure process while reviewing his loan modification. FAC ¶ 4. Plaintiff alleges that he has been awaiting the final results of his loan modification application since 2010, but Wells Fargo proceeded with the foreclosure sale. The Court finds that Plaintiff's allegations are insufficient for two reasons. First, he fails to identify any written loan modification contract. Second, if Plaintiff is attempting to allege an oral modification of the original loan agreement, this claim fails because there is no allegation that the parties reached an agreement regarding the loan modification. To form a valid modification by oral agreement, "[i]t is enough that some small additional performance is bargained for and given . . . . [It is sufficient] if the act or forbearance given or promised as consideration differs in any way from what was previously due." *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451, at *4 (N.D. Cal. Mar. 28, 2011) (quoting *House v. Lala*, 214 Cal. App. 2d 238, 243 (1963)); *Lyons v. Bank of America, NA*, 2011 WL 3607608, at *4-5 (N.D. Cal. Aug. 15, 2011).

In *Lyons*, the court, relying on *Ansanelli*, concluded that an oral loan modification is valid, provided there is consideration for the modification and it is executed by the promisee. *Lyons*, 2011 WL 3607608, at *4. The court found that the plaintiffs stated a claim for relief by alleging that they were granted an oral loan modification and given a trial period and payment amount, but that the defendants breached the agreement by increasing the payment amount before the plaintiffs could submit any payments. *Id.* at *3; *see also Ansanelli*, 2011 WL 1134451, at *3-5 (finding plaintiffs stated a valid breach of contract claim where the parties agreed to a trial modification plan and plaintiffs expended time and energy and made financial disclosures in furtherance of the

13

agreement). Here, although Plaintiff alleges that he responded to Wells Fargo's requests for information, he does not allege that the parties entered into a trial or permanent modification plan.

Based on this analysis, the Court finds that Plaintiff has failed to state a breach of contract claim. Accordingly, Wells Fargo's Motion is GRANTED. However, Plaintiff is given leave to amend this claim, but only to the extent that his is able to plead facts showing the existence of either a trial or permanent loan modification contract with sufficiently definite terms, his own performance, breach by Wells Fargo, and damages.

## CONCLUSION

Based on the analysis above, the Court GRANTS IN PART and DENIES IN PART Wells Fargo's Motion to Dismiss. Wells Fargo's Motion is:

1) DENIED with respect to preemption under the Home Owners Loan Act, 12 U.S.C. § 1461 *et seq.*;

2) DENIED as to Plaintiff's promissory estoppel claim;

3) DENIED as to Plaintiff's fraud claim;

4) DENIED as to Plaintiff's negligent misrepresentation claim; and

5) GRANTED WITH LEAVE TO AMEND as to Plaintiff's breach of contract claim.

If Plaintiff chooses to file an amended complaint, he must do so by June 6, 2014.

**IT IS SO ORDERED.**

Dated: May 13, 2014

MARIA-ELENA JAMES
United States Magistrate Judge