UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURENCE FAULKS,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>Defendants. | Case No. 13-cv-02871-MEJ<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; ORDER MODIFYING CASE SCHEDULE**<br><br>Re: Dkt. No. 70 |

## INTRODUCTION

Plaintiff Laurence Faulks brings this case against Wells Fargo & Company, Bank, N.A. and Wells Fargo Home Mortgage (collectively, "Wells Fargo") challenging its actions related to the foreclosure on real property located at 25 Cameo Way, San Francisco, California 94131 (the "Property"). First Am. Compl. ("FAC") ¶ 2, Dkt. No. 18. Pending before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a). Dkt. No. 70. Wells Fargo filed an Opposition (Dkt. No. 74), and Plaintiff filed a Reply (Dkt. No. 75). The Court finds this matter suitable for disposition without oral argument and **VACATES** the August 20, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the Motion for the reasons set forth below.

## BACKGROUND

Plaintiff filed this lawsuit pro se on May 17, 2013 in the Superior Court of San Francisco, alleging Wells Fargo negligently and fraudulently denied Plaintiff's loan modification and foreclosed on the Property securing his loan. Dkt. No. 1-1. Wells Fargo later removed the case to this Court on June 21, 2013. *Id.* At some point before August 29, 2013, Plaintiff obtained counsel, who then filed his FAC. The FAC initially asserted causes of action for promissory

estoppel, fraud, negligent misrepresentation, and breach of contract. FAC ¶¶ 4-10. On May 13, 2014, the Court issued an Order granting in part and denying in part Wells Fargo's Motion to Dismiss, declining to dismiss Plaintiff's promissory estoppel, fraud, and negligent misrepresentation claims, but dismissing his breach of contract claim. Dkt. No. 40.

Plaintiff subsequently sought new counsel and substituted his current counsel, United Law Center, as his attorneys in this action. Dkt. No. 58. The Court then entered a case management order granting the parties' stipulated schedule, which set June 30, 2015 as the discovery deadline and August 5, 2015 as the deadline to seek leave to amend pleadings. Dkt. No. 63.

On July 14, 2015, Plaintiff filed this Motion for Leave to Amend to file a Second Amended Complaint. Dkt. No. 70. Plaintiff's proposed Second Amended Complaint ("SAC") adds claims for Negligence, Intentional Infliction of Emotional Distress ("IIED"), Negligent Infliction of Emotional Distress ("NIED"), Conversion, and additional allegations of intentional and negligent misrepresentations. Mot. at 2. Plaintiff states the proposed claims are based on new information his counsel discovered, including documents showing Plaintiff "continuously expressed feelings of fright of being homeless, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment," and that Plaintiff sought counseling at the Integral Counseling Center in San Francisco, California, where he attended 39 psychotherapy sessions from June 19, 2012 to April 29, 2013, in which he expressed his severe emotional distress about Wells Fargo's actions. *Id.* at 2. He further asserts he has new evidence showing this distress caused him sleepless nights, emergency room admissions, and that his health was adversely affected after the foreclosure when he became homeless and began living out of his van. *Id.* at 3.

Wells Fargo states that prior to stipulating with Plaintiff to change the case schedule, its counsel explicitly rejected Plaintiff's request to stipulate to allowing Plaintiff to file a second amended complaint to add an IIED claim. Opp'n at 4 (citing Armstrong Decl. ¶ 4, Dkt. No. 61-1). It now contends Plaintiff's "motion to amend has been brought in bad faith, with undue delay," as well as that the Motion is futile and prejudices Wells Fargo. *Id.* at 3.

Since Plaintiff filed his Motion, the Court granted the parties' recent stipulation extending the Discovery and Dispositive Motion cut-off dates to August 31, 2015. Dkt. No. 73.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1). Outside of this timeframe, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted), *aff'd on other ground sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015). "Prejudice to the opposing party is the most important factor." *Jackson*, 902 F.2d at 1387. "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted; emphasis in original).

**DISCUSSION**

**A.      Prejudice to the Opposing Party**

As the party opposing amendment, Wells Fargo bears the burden of demonstrating it will be prejudiced if the Court allows Plaintiff to amend. *See id*. Wells Fargo contends it would be prejudiced if Plaintiff's Motion is granted because it will not have sufficient time to propound discovery regarding the "recently discovered evidence," as the discovery deadline is August 31, 2015. Opp'n at 6. It also contends Plaintiff's actions up until this point have resulted in repeated delays and postponements, running up the costs of defense for Wells Fargo, which will only increase if the timeline is extended. *Id.* (citing Armstrong Decl. ¶¶ 2-10). It does not provide specifics as to what expenses in particular it believes will increase the costs of litigation.

3

"A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Sols.*, 194 F.3d 980, 986 (9th Cir. 1999) (citing *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998)). However, "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Tyco Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009) (citation omitted).

In this particular situation, the Court finds Wells Fargo has not met its burden of demonstrating prejudice. As Plaintiff points out, the trial is still more than five months away (*see* Dkt. No. 63), and Wells Fargo knew of Plaintiff's intent to add an IIED claim by April 17, 2015, when Plaintiff's counsel requested that Wells Fargo stipulate to the filing of a SAC to add such a claim. Reply at 8; Armstrong Decl. ¶ 4. Approximately one month later, on May 14, 2015, Wells Fargo stipulated to a revised schedule, including a deadline for amended pleadings. Dkt. No. 63. Plaintiff further contends his SAC does not change the nature of the lawsuit, which he asserts arises from the same set of general facts already pleading in the FAC. Reply at 8. Wells Fargo's Opposition itself notes, "[a]mong other damages alleged in the first amended complaint, Plaintiff alleged that he was rendered homeless by Wells Fargo's actions and that '[h]e has suffered severe emotional distress as a result.'" Opp'n at 2 (quoting FAC ¶ 20).

Given these facts, Wells Fargo knew about Plaintiff's claims for emotional distress damages in advance of both the earlier discovery cut-off date and the revised discovery cut-off date, which has yet to pass. Thus, it had the opportunity to conduct discovery into the related damages claims beforehand. At this point, it is not clear what discovery, if any, Wells Fargo contends it still needs as a result of Plaintiff's proposed amended claims; there is no dispute that it has the new medical evidence supporting Plaintiff's IIED claim (*see* Armstrong Decl. ¶ 11), and Wells Fargo has not shown why obtaining any other discovery related to this claim or any other of the new claims would be of any significant expense or cause it other prejudice. Furthermore, some of the discovery it might seek to explore on the proposed claims, such as Plaintiff's deposition testimony, is related to discovery Wells Fargo has yet to take. Indeed, Wells Fargo's

4

counsel explained it has not yet had the opportunity to depose Plaintiff. Without more, the Court cannot find Wells Fargo has shown prejudice.

### B.     Bad Faith

Wells Fargo argues, however, that Plaintiff's Motion is made in bad faith, because (1) it agreed to modify the case schedule, including the amended pleading deadline, without knowledge of Plaintiff's plan to amend, and (2) it expressly rejected Plaintiff's earlier request to stipulate to a motion to file a SAC. Opp'n at 3-4. It explains that it only stipulated to a postponement of pretrial dates to accommodate Plaintiff's request for additional time to respond to Wells Fargo's discovery demands and deposition notice. *Id.* at 4.

In response, Plaintiff contends Wells Fargo was aware of his desire to file an amended complaint weeks before it stipulated to amending the pretrial dates, noting his earlier request to stipulate to filing a SAC. Reply at 6. He contends that despite this knowledge, Wells Fargo's counsel drafted the stipulation moving all the pre-trial dates and sent it to Plaintiff's counsel for review and approval. Armstrong Decl. ¶ 7. Plaintiff then sought leave to amend nearly three weeks before the deadline for filing amended pleadings. Reply at 6.

The Court cannot find bad faith on the basis of this record. Wells Fargo was on notice that Plaintiff intended to amend, and there are no facts demonstrating that Plaintiff or his counsel manipulated Wells Fargo into stipulating to the revised schedule. Although Wells Fargo asserts "Plaintiff did not raise a potential amendment as a basis for the stipulation, and Wells Fargo did not agree to any such amendment of the pleadings[,]" it was not Plaintiff's responsibility to remind Wells Fargo at the time of their stipulation of his desire to amend. Further, the stipulation does not establish that Wells Fargo agreed to allow Plaintiff to amend his pleadings. Indeed, Plaintiff only seeks *leave* to file an amended complaint. Finally, Wells Fargo was aware Plaintiff had new counsel, and according to Plaintiff, the "new causes of action are based on new information that Plaintiff's current counsel has recently discovered[.]" Mot. at 2. Wells Fargo has not shown the proposed causes of action are baseless or presented for the purpose of prolonging the litigation. *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999) (bad faith in filing a motion for leave to amend when addition of new legal theories are baseless and presented

5

to prolong litigation).  Given the foregoing facts, the Court finds the "bad faith" factor does not weigh against Plaintiff's Motion for Leave to Amend.  *See Music Grp. Macao Commercial Offshore Ltd. v. Foote*, 2015 WL 3882448, at *20 (N.D. Cal. June 23, 2015) (no bad faith where the plaintiff earlier alerted the defendant that filing an amended pleading was a possibility and noting "[a]mending in light of newly discovered evidence is not bad faith.").

C.     **Previous Amendments & Undue Delay**

Wells Fargo further contends Plaintiff unduly delayed in seeking to add his IIED claims, arguing the allegations in his initial complaint and FAC show he was aware he was suffering distress at the time he filed those complaints.  Opp'n at 5.  It asserts Plaintiff unduly delayed by waiting two years and until the eve of trial to add these new claims based on facts he knew about as early as June 2012, when Plaintiff started therapy.  *Id.* at 4-5.  Wells Fargo contends "Plaintiff can offer no explanation why these damages were undiscoverable, or how they warrant new causes of action not previously asserted."  *Id.* at 4.

In response, Plaintiff argues that while he knew Wells Fargo's actions adversely affected his health, he "did not recognize the significance of his psychotherapy records on certain causes of action and their required legal elements."  Reply at 7.  He explains his new counsel recognized the importance of his psychotherapy records and guided him in obtaining them.  *Id.* at 8.  Plaintiff contends he should not be penalized for his prior counsel's failure to plead emotional distress claims, citing *American Family Mutual Insurance Company v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013), which provides: "The goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel."  Reply at 8.  Although *Hollander* is not on all fours with this one for a variety of reasons,[1] the Court takes Plaintiff's point that he should not be penalized for his prior counsel's earlier failure to investigate these claims or properly plead them as separate causes of action rather than merely as emotional distress damages as described by Wells Fargo.

There is no question Plaintiff delayed in asserting his emotional distress claims as separate

---

[1] Not the least of which is that it refers to Rule 15(b), rather than Rule 15(a)—the applicable rule in this instance.

causes of action; however, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("delay of nearly two years, while not alone enough to support denial, is nevertheless relevant"). Considering the record and the considerations above, the Court cannot find this delay warrants barring Plaintiff from amending his complaint. Rather, it is in the interests of justice to allow Plaintiff, now with the guidance of his new counsel, to have an opportunity to set forth his claims with more precision. Furthermore, Plaintiff filed this Motion weeks before the deadline for amending pleadings, rather than waiting until the last possible moment to file and causing further delay. Accordingly, while courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted, *see Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002), the Court finds Plaintiff's earlier pleadings and the delay in this case do not ultimately prohibit him from filing an amended complaint.

**D.      Futility of Amendment**

Finally, Wells Fargo argues amendment of the Complaint would be futile, as the allegations in the proposed SAC do not support a claim for either Intentional or Negligent Infliction of Emotional Distress. Opp'n at 6. It does not challenge Plaintiff's proposed claims for Conversion or Negligence, or his additional allegations of intentional and negligent misrepresentations.

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). The standard to be applied is identical to that on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A

7

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation and internal quotation marks omitted).

### 1. IIED Claim

An IIED claim exists when there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009) (quotations and citations omitted). Liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 1051 (quotation and citations omitted). With respect to the requirement that the plaintiff show severe emotional distress, the California Supreme Court has set "a high bar." *Id.* "Severe emotional distress" means "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id.* (noting plaintiff's assertions that she "suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" as the result of defendants' actions did not suffice (quotation omitted)). Furthermore, for a defendant's conduct to qualify as outrageous, "[t]he conduct must be so extreme as to exceed the bounds of what is 'usually tolerated in civilized community.'" *Id.* at 1050 (internal citations and quotation marks omitted); *see also Bogard v. Emp. Cas. Co.*, 164 Cal. App. 3d 602, 616 (1985) ("[B]ehavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interests; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." (citation omitted)).

Wells Fargo challenges Plaintiff's IIED claim on several grounds, noting first the proposed allegation that "[t]he stress of Plaintiff's efforts to satisfy Wells Fargo's unreasonable deadline resulted in an exacerbation of Plaintiff's chronic sinus pain . . ." Opp'n at 6 (quoting SAC ¶ 76). Wells Fargo asserts, without citing any authority, that IIED "claims must directly cause physical harm; it is insufficient that Wells Fargo's alleged activity can be tenuously connected to Plaintiff's

8

supposed injury through 'exacerbation' of an existing condition as a result of stress." *Id.* at 6-7. Plaintiff does not respond to this argument. Wells Fargo then argues its "mere[] enforce[ment of] its rights under the parties' loan agreement based on Plaintiff's delinquency" is not conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 7-8 (citing *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998); *Girard v. Ball*, 125 Cal. App. 3d 772, 786-87 (1981) (creditor's conduct was a "privileged assertion of an economic interest in good faith . . . respondent's conduct was not outrageous nor extreme . . . ."); *Sierra-Bay Fed. Land Bank Ass'n v. Superior Ct.*, 227 Cal. App. 3d 318, 334 (1991) ("It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid"); *Karimi v. Wells Fargo*, 2011 U.S. Dist. Lexis 47902, at *6 [also available at 2011 WL 10653746] (C.D. Cal. May 4, 2011) ("Because the foreclosure of Plaintiffs' home was an assertion of legal rights in pursuit of Defendant's own economic interests, it was not outrageous. Moreover, courts in the Ninth Circuit have held that foreclosure fails to be outrageous even when the mortgage company has orally promised not to foreclose.")). Again, Plaintiff does not address this argument.

Wells Fargo is correct that "multiple California district courts have held that the act of foreclosing on a home does not qualify as the type of extreme behavior that supports an IIED claim absent allegations of bad faith." *Kennedy v. World Sav. Bank, FSB*, 2015 WL 1814634, at *9 (N.D. Cal. Apr. 21, 2015) (citing *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) ("Where a lending party in good faith asserts its right to foreclose according to contract . . . its conduct falls shy of 'outrageous,' however wrenching the effects on the borrower."); *Helmer v. Bank of Am., N.A*, 2013 WL 4546285, at *8 (E.D. Cal. Aug. 27, 2013) (same); *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) (same)).

However, where bad faith or other outrageous conduct is present, courts have permitted plaintiffs to maintain their IIED claims. For instance, in *Ragland v. U.S. Bank National Association*, the California Court of Appeal held the plaintiff could maintain her IIED claim where the defendant lender "engaged in outrageous conduct by inducing her to skip the April loan

9

payment, refusing later to accept loan payments, and selling her home at foreclosure." 209 Cal. App. 4th 182, 204 (2012). "What *Ragland* demonstrates is that when a lender exhibits either bad faith or gross negligence in its interactions with a plaintiff, and the plaintiff alleges facts showing that defendant had no right to foreclose, the 'outrageous' standard can be met." *Rowen v. Bank of Am., N.A.*, 2013 WL 1182947, at *4 (C.D. Cal. Mar. 18, 2013). "Moreover, where a plaintiff has alleged that she has been denied important economic interests through dishonest acts by the defendant, California courts have approved claims for IIED." *Id.* (citation omitted). The *Rowen* court distinguished that case from the cases prohibiting IIED claims associated with the typical foreclosure process, noting that "[b]ecause plaintiff has alleged dishonesty, bad faith, and the lack of a legal right to foreclose, *Ragland* supports a finding that she has adequately alleged outrageous conduct." *Id.*; *see also Pulley v. Wells Fargo Bank, N.A.*, 2015 WL 1393417, at *8 (N.D. Cal. Mar. 26, 2015) (viable IIED claim where plaintiff alleged Wells Fargo "processed his loan modification requests, encouraged him to reapply, and requested additional information from him on numerous occasions over the course of five years while knowing that it did not have the contractual authority to modify the loan."); *McGough v. Wells Fargo Bank, N.A.*, 2012 WL 2277931, at *7 (N.D. Cal. June 18, 2012) (allowing IIED claim where complaint "allege[d] conduct in bad faith, with reckless disregard for Plaintiff's potential emotional distress"). Accordingly, "it suffice[d] for plaintiff to allege that [the defendant] acted 'with reckless disregard of the probability of causing[ ] emotional distress.'" *Rowen*, 2013 WL 1182947, at *4 (quoting *Hughes*, 46 Cal. 4th at 1050).

Having reviewed Plaintiff's proposed SAC, the Court finds Plaintiff has provided plausible allegations showing Wells Fargo's actions went beyond the typically emotionally-fraught foreclosure process and that it acted in bad faith and with reckless disregard for Plaintiff's emotional distress. Among other things, Plaintiff alleges Wells Fargo engaged in a scheme to make it extremely difficult for him to ensure that all requested information was timely submitted and that a proper modification review could take place. SAC ¶ 75. He alleges Wells Fargo required him to send "a tremendous amount" of documents via fax on a very short deadline and "intentionally or recklessly left one digit out of the fax number," causing Plaintiff "tremendous

stress" and making him spend several hours tracking down the correct number. *Id.* He further alleges Wells Fargo continuously lost and or misplaced his documents and continually requested he resubmit information he already sent. *Id.* ¶ 77. Plaintiff alleges Wells Fargo did this despite knowing he was disabled. *Id.* Plaintiff also alleges Wells Fargo proceeded with the foreclosure sale even though it had requested more documents relating to its review of Plaintiff's loan modification just two days before foreclosing on the Property. *Id.* ¶ 78. Elsewhere, Plaintiff alleges Wells Fargo's "misrepresentations were designed to provide Plaintiff with the false hope that a modification would be granted in order to induce him to continue with the process," which he contends Wells Fargo "never intended to complete in order to accrue fees and penalties to which it would not have been entitled had Plaintiff never entered into the modification process in the first place." *Id.* ¶ 28. Taking these allegations as true, Plaintiff has alleged that Wells Fargo's conduct was outrageous.[2] *Cf. Quinteros*, 740 F. Supp. 2d at 1172 ("The act of foreclosing on a home (*absent other circumstances*) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim." (emphasis added)).

Consequently, Plaintiff alleges he suffered "severe emotional distress as a result of Wells Fargo's actions in playing this shell game with [his] home." *Id.* ¶ 80. He alleges Wells Fargo's actions, including its "mishandling of his loan modification documents, caused [him] sleepless nights and emergency room admissions." *Id.* He further alleges that "[a]s a result of Wells Fargo's reckless behavior and foreclosure on [his] home, [he] was so emotionally distraught that he had to seek counseling[.]" *Id.* After the foreclosure, Plaintiff attended 39 counseling sessions over several months where he "continuously expressed feelings of fright of being homeless, grief, shame, humiliation, embarrassment, anger, chagrin, [and] disappointment as a result of Wells Fargo's actions." *Id.* While Wells Fargo points out that Plaintiff's allegations about the exacerbation of his sinus condition are not directly connected to his emotional distress, the presence of this one potentially wayward allegation does not undermine Plaintiff's entire IIED

---

[2] It is not clear from Plaintiff's SAC whether he seeks to allege that Wells Fargo acted in bad faith in foreclosing on Plaintiff's home, i.e., that it did not have a legal right to foreclose, such as in *Rowen* and *Pulley*.

11

claim. The proposed SAC alleges plausible facts showing Plaintiff suffered severe emotional distress as the proximate cause of Wells Fargo's outrageous conduct. *Cf. Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1079-80 (E.D. Cal. 2007) (plaintiff's sleeplessness, shaky hands, and anxiety insufficient to establish severe emotional distress where she did not see a doctor or take medication).

Accordingly, the Court finds Plaintiff's proposed IIED claim is not futile.

2. NIED

Second, Wells Fargo challenges Plaintiff's NIED claims on various grounds. As an initial matter, Wells Fargo notes "[t]here is no independent tort of negligent infliction of emotional distress." Opp'n at 7 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) (citation omitted)). Rather, Wells Fargo is correct that "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." *Potter*, 6 Cal. 4th at 984; *see also Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993) (NIED "is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply."). Stated another way, "[t]here is no duty to avoid negligently causing emotional distress to another, and [] damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." *Potter*, 6 Cal. 4th at 984. Accordingly, the California Supreme Court has held that "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Id.* at 985. "Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." *Id.* (allowing recovery of emotional distress damages where plaintiffs' fear of cancer after ingesting known and suspected carcinogens was proximately caused by tire manufacturer's breach of its legal duty to properly dispose of toxic waste).

Wells Fargo thus argues "Plaintiff cannot claim emotional distress damages in connection with [its] alleged negligence because there was no 'threatened physical injury and not simply damage to property or financial interests.'" Opp'n at 7 (quoting *Erlich v. Menezes*, 21 Cal. 4th

12

543, 555-56 (1999)). Plaintiff does not address this argument.

*Erlich* is instructive. In that case, the California Supreme Court considered whether emotional distress damages were recoverable for the negligent breach of a contract to construct a house. *Erlich*, 21 Cal. 4th at 548. The court found that such damages were not recoverable, distinguishing *Potter* on the ground that the *Erlich* plaintiffs sought recovery for emotional distress "engendered by an injury to their property." *Id.* at 555. It explained: "Although the Erlichs feared physical injury, [the defendant]'s negligent breach of contract resulted in only damage to their property[.]" *Id.* at 555-56. It further noted that "the breach—the negligent construction of the Erlichs' house—did not cause physical injury. . . . [and] [t]he only physical injury alleged [wa]s Barry Erlich's heart disease, which flowed from the emotional distress and not directly from the negligent construction." *Id.* at 557.

Although Plaintiff alleges he suffered physical injuries, these injuries—similar to those in *Erlich*—appear to have arisen as a result of his emotional stress, rather than directly from Wells Fargo's negligence. *Potter*, 6 Cal. 4th at 984. Put another way, Wells Fargo's purportedly negligent acts did not threaten Plaintiff with physical injuries. This is different from *Potter*, where the defendant's negligence in illegally disposing of toxic, carcinogenic chemicals threatened serious physical injury to the exposed plaintiffs and proximately caused their fear of cancer. *Id.* at 985-89. Here, ultimately, Plaintiff's allegations of physical and "emotional suffering still derive[] from an inherently economic concern." *Erlich*, 21 Cal. 4th at 558.

Moreover, even if Wells Fargo owed Plaintiff a duty of care in processing his loan modification application, Plaintiff has not pled facts showing this duty relating to Plaintiff's property and financial interests included a duty to protect him from emotional distress or physical harm. *See Gonzales v. Pers. Storage, Inc.*, 56 Cal. App. 4th 464, 474 (1997), *as modified on denial of reh'g* (Aug. 7, 1997) ("[W]e must also agree that Personal Storage's duty to protect Gonzales's property, whether limited by the terms of the lease or not, did not include a duty to protect Gonzales from emotional distress or physical harm[.]").

In sum, neither Plaintiff's briefing on this issue nor his proposed SAC contain allegations showing Wells Fargo had a duty in which Plaintiff's emotional condition was an object or that

13

Well Fargo breached another duty that threatened physical injury to Plaintiff. *See Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010). Unless Plaintiff can plausibly allege facts showing otherwise, his claim for emotional distress damages as a result of Wells Fargo's purported negligence is futile. *See Dushey v. Accu Bite, Inc.*, 2006 WL 1582221, at *2 (E.D. Cal. June 2, 2006) ("Absent some threatened physical injury . . . or a contractual duty to protect plaintiffs' emotional tranquility, . . . plaintiffs cannot make out a claim for [NIED]." (quotation and internal marks omitted)); *see also Eastman v. Allstate Ins. Co.*, 2014 WL 5355036, at *9 (S.D. Cal. Oct. 20, 2014) ("emotional distress damages are not 'available in every case in which there is an independent cause of action founded upon negligence.'" (quoting *Erlich*, 21 Cal. 4th at 554)).

## CONCLUSION

In light of the foregoing analysis, the Court **GRANTS** Plaintiff's Motion for Leave to Amend his Complaint, but Plaintiff may only file his NIED claim if he is able to plead facts showing Wells Fargo had a duty in which Plaintiff's emotional condition was an object or that it breached another duty that threatened physical injury to Plaintiff. Plaintiff shall file a revised Second Amended Complaint **by September 8, 2015**.

Additionally, the Court **CONTINUES** the Discovery cut-off date to October 6, 2015 and the Dispositive Motion Deadline to October 20, 2015. All other trial and pretrial dates are **VACATED** pending resolution of dispositive motions.

**IT IS SO ORDERED.**

Dated: August 17, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge