UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURENCE FAULKS,

Plaintiff,

v.

WELLS FARGO & COMPANY, et al.,

Defendants.

Case No. 13-cv-02871-MEJ

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 126

## INTRODUCTION

Pending before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Summary Judgment. Mot., Dkt. No. 126. Plaintiff Laurence Faulks ("Plaintiff") filed an Opposition (Dkt. No. 129) and Wells Fargo filed a Reply (Dkt. No. 134). The Court previously vacated the hearing on the Motion. Dkt. No. 135. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Wells Fargo's Motion for the following reasons.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. On July 3, 2007, Plaintiff obtained a $525,000 mortgage loan from World Savings Bank, FSB (the "Loan"). Declaration of Brandon McNeal ("McNeal Decl.") ¶ 7, Dkt. No. 128-1; Declaration of Laurence Faulks ("Faulks Decl.") ¶ 6, Dkt. No. 129-1. The Loan was secured by a deed of trust recorded against real property—Plaintiff's house located at 25 Cameo Way, San Francisco, California (the "Property"). McNeal Decl. ¶ 7. World Savings Bank, FSP later changed its name to Wachovia Mortgage, FSP,

1   which then merged with Wells Fargo in November 2009.  Mot. at 1; Opp'n at 1-2.[1]

2   Plaintiff suffered from serious medical problems in August 2009, which worsened in

3   January 2010.  Declaration of Daniel A. Armstrong ("First Armstrong Decl."), Ex. 1 ("Faulks

4   Dep.") 21-18:22-8, Dkt. No. 126-1; Faulks Decl. ¶¶ 9-10.  He began receiving California disability

5   benefits in January 2010.  Faulks Decl. ¶ 12.  Plaintiff missed his first Loan payment in April

6   2010.  McNeal Decl. ¶ 8 & Ex. 1 (Processing Notes) at 10; Faulks Decl. ¶ 13.

7   In late 2010, Plaintiff applied for a loan modification under the Home Affordable

8   Modification Program ("HAMP").  McNeal Decl. ¶ 9, Ex. 2 at 15 ("WF Feb. 16 Letter"); Faulks

9   Decl. ¶¶ 15-16 & Ex. 3 ("Pl. Feb. 16 Letter").  On February 16, 2011, Wells Fargo sent Plaintiff a

10  letter acknowledging the receipt of documents and stating those documents were under review.

11  WF Feb. 16 Letter; Pl. Feb. 16 Letter.  The letter further stated, "[i]f your loan has been previously

12  referred to foreclosure then we will continue the foreclosure process while we evaluate your loan

13  for HAMP.  However, no further foreclosure sale will be conducted and you will not lose your

14  home during the HAMP evaluation."  *Id.* (both).  Wells Fargo denied Plaintiff's application on

15  February 25, 2011 on account of Plaintiff's "excessive financial obligations."  Faulks Decl., Ex. 4;

16  *see id.* ¶ 18; McNeal Decl. ¶ 9 & Ex. 2 at 25 (Feb. 25, 2011 Loss Mitigation Processing Note

17  ("Feb. 25 LMT Process Note") stating "DISPOSITION: EXCESSIVE FORBEARANCE-

18  THRESHOLD CANNOT BE REACHED").

19  Plaintiff applied for another modification review in June or July 2011.  McNeal Decl. ¶ 10

20  & Ex. 3; Faulks Decl. ¶ 19.  On July 27, 2011, Plaintiff received a letter from Wells Fargo

21  requesting additional information, including tax returns, Social Security verification, and income

22  documentation by August 26, 2011.  McNeal Decl. ¶ 10 & Ex. 4 (July 27, 2011 letter); Faulks

23  Decl. ¶ 21 & Ex. 5 (July 27, 2011 letter).  On August 22, 2011, Wells Fargo caused to be recorded

24

25  [1] The Court previously took judicial notice of (1) a Letter dated November 19, 2007, on the
    letterhead of the OTS authorizing a name change from World Savings Bank, FSB to Wachovia
26  Mortgage, FSB; (2) Charter of Wachovia Mortgage, FSB, dated December 31, 2007, reflecting in
    Section 4 that it is subject to HOLA and the OTS; and (3) Official Certification of the Comptroller
27  of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage, FSB
    converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo
28  Bank, N.A.  First Mot. to Dismiss ("MTD") Order, Dkt. No. 40; *see* Exs. C-E, Dkt. No. 20.

a Notice of Default and Election to Sell under Deed of Trust.  McNeal Decl. ¶ 11 & Ex. 5 (Notice).  On August 27, 2011, Wells Fargo sent Plaintiff another letter stating it still had not received the requested documents and notifying him that if it did not timely receive the documents, "the modification request will be considered withdrawn[.]"  *Id.* ¶ 12 & Ex. 6.  The August 27 letter extended the deadline for Plaintiff to submit the documents to September 11, 2011.  *Id.* (both).  On September 13, 2011, Wells Fargo sent Plaintiff a letter stating it had not received the required documentation; as such, it deemed Plaintiff's request for HAMP assistance withdrawn.  *Id.* ¶ 12 & Ex. 8 (Sept. 13, 2011 letter).

Plaintiff sought another loan modification review in September 2011.  *Id.* ¶ 13 & Ex. 9 at 50; *see* Mot. at 3.  On September 27, 2011, Wells Fargo Executive Mortgage Specialist Jennifer Klute sent Plaintiff via overnight mail a letter dated September 24, 2011.  Faulks Decl. ¶ 22 & Ex. 6 (Sept. 24, 2011 letter and envelope).  This letter, which Plaintiff received on September 28, 2011, requested that Plaintiff fax Wells Fargo his "award letter from Social Security Disability for evidence of income" by September 30, 2011.  *Id.* (both).  But the fax number listed in the letter was incomplete; as such, Plaintiff was unable to successfully fax the required documents.  *Id.* ¶ 23. He went to his local Wells Fargo branch office, where he worked with a Wells Fargo employee to determine the correct fax number.  *Id.* Plaintiff asserts that for the next three days, he spent approximately ten hours a day trying to submit his documents by the September 30 deadline.  *Id.*

Wells Fargo received all of Plaintiff's required documentation on October 10, 2011. McNeal Decl. ¶ 14 & Ex. 10 at 56-62 (Oct. 7-13, 2011 Loss Mitigation Process Notes ("Oct. 7-13 LMT Process Notes")).  That same day, Wells Fargo mailed Plaintiff a letter stating his loan was being reviewed under the HAMP program.  *Id.* ¶ 14 & Ex. 11 at 68-70 ("WF Oct. 10 Letter"); Faulks Decl. ¶ 24 & Ex. 8 ("Pl. Oct. 10 Letter").  This letter included the following statements:

> The HAMP evaluation and the process of foreclosure may proceed at the same time.  If the loan has been previously referred to foreclosure, the foreclosure process will continue while the loan is evaluated for HAMP.  However, no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation.

WF Oct. 10 Letter at 68; Pl. Oct. 10 Letter at 1.

United States District Court
Northern District of California

1   Plaintiff contends Wells Fargo sent him two letters dated October 11, 2011.  The first letter

2   notified him that his mortgage was being reviewed under the HAMP program.  Faulks Decl. ¶ 25

3   & Ex. 9 ("Oct. 11 Review Letter").  According to Plaintiff, the letter contained a statement that

4   "[d]uring the review process, your loan will not be referred to foreclosure.  If the loan has

5   previously been referred to foreclosure, the foreclosure will continue; however, a foreclosure sale

6   will not be held and you will not lose your home during this time period."  Oct. 11 Review Letter

7   at 1.

8       The parties agree that Wells Fargo sent Plaintiff a letter dated October 11, 2011 denying

9   his application due to Plaintiff's "excessive financial obligations."  *Id.* ¶ 14 & Ex. 11 at 71-72

10  ("WF Oct. 11 Denial Letter"); Faulks Decl. ¶ 25 & Ex. 10 at 1 ("Pl. Oct. 11 Denial Letter").  Mr.

11  McNeal explains that Plaintiff's financial documentation showed a gross monthly income of

12  $2,685.88.  McNeal Decl. ¶ 14.  Wells Fargo could not reduce Plaintiff's mortgage installment to

13  an amount representing 31-34% of his gross monthly income without changing the terms of the

14  Loan beyond HAMP's requirements.  *Id.*; WF Oct. 11 Denial Letter at 71; Pl. Oct. 11 Denial

15  Letter at 1.

16      On December 8, 2011, Plaintiff attended a Home Preservation Workshop.  Faulks Decl. ¶

17  27.  That day, he met with Wells Fargo representative Justin Saavedra.  *Id.* ¶ 27; McNeal Decl. ¶

18  16 & Ex. 13 (Dec. 8, 2011 SER Process Notes).  Plaintiff also met with Alejandro Copado from

19  Consumer Credit Counseling of San Francisco ("CCC").  Faulks Decl. ¶ 27.  According to Wells

20  Fargo, a Wells Fargo representative advised Plaintiff that he needed to submit financial

21  documentation in order to initiate another modification review.  McNeal Decl. ¶ 16 & Ex. 13 at 77

22  (Dec. 8, 2011 SER Process Notes).  On December 22, 2011, Wells Fargo sent Plaintiff a letter

23  requesting additional documents: a completed IRS form 4506-T, Plaintiff's tax returns, and

24  income documentation.  McNeal Decl. ¶ 16 & Ex. 14 (Dec. 23, 2011 Letter).  Having received no

25  response from Plaintiff, Wells Fargo attempted to contact Plaintiff via telephone starting on

26  December 27, 2011.  *Id.* ¶ 17 & Ex. 15 at 83 (Dec. 27, 2011-Jan. 23, 2012 SER Process Notes).

27  Wells Fargo asserts that it managed to reach Plaintiff on January 13, 2012.  *Id.* ¶ 17 & Ex. 15 at

28  84.  Plaintiff contends that that same day, he faxed to Mr. Saavedra his IRS form 4506-T, tax

4

1    returns, and social security increase notice.  Faulks Decl. ¶ 13 & Ex. 11 (fax cover sheet dated Jan.

2    13, 2012).

3         Wells Fargo avers that on January 23, 2012, it determined that it was still missing required

4    documentation and contacted Plaintiff via telephone and by letter to inform him of such.  McNeal

5    Decl. ¶ 17, Ex. 15 at 85, Ex. 16 (Jan. 23, 2012 letter).  The letter, signed by Justin Saavedra, stated

6    that Mr. Saavendra "ha[d] not received all of the documentation previously requested" and set a

7    deadline of February 7, 2012 for Plaintiff to submit the required papers.  Ex. 16 at 86, *id.*  The

8    letter warned Plaintiff that "[i]f [he] did not receive the required documents by February 07, 2012,

9    the modification request would be considered withdrawn, and collection efforts w[ould] resume."

10   *Id.*  Wells Fargo did not receive the requested documentation by February 7, 2012.  *Id.* ¶ 18.

11        The parties agree that on February 9, 2012, Wells Fargo sent Plaintiff a letter notifying him

12   that Wells Fargo was unable to offer him a loan modification under HAMP because he failed to

13   provide the requested documents; for that reason, his application was considered withdrawn.  *Id.*

14   ¶ 18 & Ex. 17 (WF Feb. 9, 2012 Letter); Faulks Decl. ¶ 32 & Ex. 14 (Pl. Feb. 9, 2012 Letter).

15   Wells Fargo Home Preservation Specialist Cynthia Boyd sent Plaintiff a letter dated February 13,

16   2012 to inform him of alternative options.  McNeal Decl. ¶ 19 & Ex. 90 (WF Feb. 13, 2012

17   Letter); Faulks Decl. ¶ 34 & Ex. 15 at (Pl. Feb. 13, 2012 Letter).  Both parties allege a series of

18   missed connections followed.  Plaintiff contends that on February 16, 2012, he attempted to call

19   Ms. Boyd six different times and was unable to reach her.  Faulks Decl. ¶ 35.  Wells Fargo asserts

20   that it unsuccessfully attempted to contact Plaintiff on February 13, 14, and 20, 2012 to discuss the

21   removal of his loan from active home preservation review.  McNeal Decl. ¶ 20 & Ex. 19 at 92

22   (Feb. 9-Mar. 21 SER Process Notes); *see id.* ¶¶ 22-23.

23        On February 28, 2012, Wells Fargo received a fax from Plaintiff containing an updated

24   lease agreement dated February 21, 2012.  *Id.* ¶ 24 & Ex. 20 (faxed copy of Feb. 21, 2012 lease

25   agreement); *see* Faulks Decl. ¶¶ 37-38 (describing Plaintiff's attempts to fax lease agreement).

26   Wells Fargo received additional documentation from CCC regarding Plaintiff's loan on April 13,

27   2012.  McNeal Decl. ¶ 30 & Ex. 23 (Apr. 13, 2012 fax containing (1) cover letter from Plaintiff to

28   CCC and (2) Plaintiff's Form 4506-T, 2012 lease agreement, and explanation for lack of 2010

United States District Court
Northern District of California

5

taxes); *see* Faulks Decl. ¶ 41; *see also id.*, Ex. 20 (Apr. 13, 2012 fax cover letter from Plaintiff to CCC).  Wells Fargo asserts it attempted to contact Plaintiff via telephone on April 13, 24, 26, and May 2, 2012 to no avail.  McNeal Decl. ¶¶ 31-34 & Ex. 24 (Consol. Notes Log).  Plaintiff contends that on May 15, 2012, Wells Fargo "reached out to CCC and requested" his lease agreement, an updated 4506-T, and his 2010 tax transcript—documents Plaintiff previously provided Wells Fargo.  Faulks Decl. ¶ 43.  Wells Fargo disputes this assertion.  *See* McNeal Decl. ¶ 36 ("I have reviewed the system notes and documents in Wells Fargo's system and have not been able to locate any emails between Wells Fargo and Consumer Credit Counseling of San Francisco on or around May 15, 2012.").  On May 17, 2012, Wells Fargo sold the Property at a foreclosure sale.  McNeal Decl. ¶ 35 & Ex. 25 (Trustee's Deed Upon Sale); Faulks Decl. ¶ 44. Plaintiff contends he was homeless for approximately one year and suffered health problems due to his homelessness.  Faulks Decl. ¶¶ 47-56.

Plaintiff initiated this lawsuit in the Superior Court of San Francisco County on May 17, 2013, and Wells Fargo removed the action on June 21, 2013.  Notice of Removal, Dkt. No. 1. Plaintiff filed his Third Amended Complaint ("TAC") on January 6, 2016.  TAC, Dkt. No. 104.  In his TAC, Plaintiff asserts five claims against Wells Fargo: (1) promissory estoppel, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) intentional infliction of emotional distress, and (5) conversion.  *Id.* ¶¶ 29-72, 77-85.[2]

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v.*

---

[2] In his TAC, Plaintiff also brought a negligence claim against CCC.  TAC ¶¶ 73-76.  However, CCC is no longer a party to the action, as the Court dismissed CCC for based on Plaintiff's failure to properly join CCC as a defendant.  Second MTD Order, Dkt. No. 119.

United States District Court
Northern District of California

1    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

2    sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

3          Where the moving party will have the burden of proof on an issue at trial, it must

4    affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

5    party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

6    the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

7    pointing out to the district court that there is an absence of evidence to support the nonmoving

8    party's case.  *Celotex*, 477 U.S. at 324-25.

9          If the moving party meets its initial burden, the opposing party must then set forth specific

10   facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ.

11   P. 56(c)(1); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most

12   favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir.

13   2004).  However, it is not the task of the Court to scour the record in search of a genuine issue of

14   triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court "rel[ies] on the

15   nonmoving party to identify with reasonable particularity the evidence that precludes summary

16   judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

17   Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine

18   issue of fact, where the evidence is not set forth in the opposing papers with adequate references

19   so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d

20   1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party

21   is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322 (internal quotation marks

22   omitted).

23         Additionally, at the summary judgment stage, parties must set out facts they will be able to

24   prove at trial.  At this stage, courts "do not focus on the admissibility of the evidence's form . . . .

25   [but] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036

26   (9th Cir. 2003) (citation omitted).  "While the evidence presented at the summary judgment stage

27   does not yet need to be in a form that would be admissible at trial, the proponent must set out facts

28   that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d

United States District Court
Northern District of California

966, 973 (9th Cir. 2010) (citations omitted).  Accordingly, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Celotex*, 477 U.S. at 324 (a party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

## EVIDENTIARY OBJECTIONS

Before turning to the parties' substantive arguments, the Court first addresses Wells Fargo's evidentiary objections to paragraph 32 and Exhibits 18 and 19 to the Faulks Declaration. Reply at 2-4; *see* Faulks Decl., Dkt. No. 129-1.

### A.     Paragraph 32

In paragraph 32, Plaintiff states "I was shocked and confused by this letter because I had submitted all of the necessary documents to Wells Fargo."  Faulks Decl. ¶ 32.  Wells Fargo argues "it is not clear what Plaintiff means by 'necessary documents.'"  Reply at 2.  Although Wells Fargo asserts that "[t]his statement lacks foundation" (*id.* citing Fed. R. Evid. 901)), it does not explicitly object to it.  Nonetheless, because the Court does not consider this statement in its analysis, any objection Wells Fargo has to it is moot.

### B.     Exhibit 18

Exhibit 18 to the Faulks Declaration, titled "L. Faulks – Phone Calls and Info from CCC," purports to show communications to and from CCC.  *See* Faulks Decl., Ex. 18.  Wells Fargo objects to this Exhibit based on lack of personal knowledge of the statements made therein, hearsay, lack of foundation, and best evidence.  Reply at 3 (citing Fed. R. Evid. 602, 801, 802, 901, 1002, 1004).

Under Rule 801, "'[h]earsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Hearsay is inadmissible unless a

United States District Court
Northern District of California

1    federal statute, the Rules, or other rules prescribed by the Supreme Court provide otherwise.  Fed.

2    R. Evid. 802.

3            Plaintiff avers that "Exhibit 18 is a true and correct copy of CCC's Phone Calls and Info

4    from CCC record which was produced to me."  Faulks Decl. ¶ 39 (error in original).  Wells Fargo

5    contends this is an "attempt[] to lull this Court into the assumption that Exhibit 18 to his

6    declaration was prepared by CCC."  Reply at 3.  Plaintiff testified in his deposition that "the

7    document is notes about [his] communication with . . . CCC" that he prepared, not CCC.  *Id.*; *see*

8    Faulks Dep. at 61:14-62:5.  Plaintiff obtained the information contained in Exhibit 18 from emails,

9    "the record from CCC that was subpoenaed," and Plaintiff's Verizon phone bills.  Faulks Dep.

10   62:18-63:11.

11           Exhibit 18 is a written report that Plaintiff prepared out of court and that contains

12   statements from third parties.  *See, e.g.*, Ex. 18 at 4 ("CCC said: 'Emailed client a list of local

13   prescription referrals per his request.");  *id.* at 6 ("CCC said: 'Called client to offer him a

14   conference call with the lender for a possible required pre-interview before submission of

15   documents.  He did not have the time now, but he will call himself and let me know what happens

16   during the call.'");  *id.* at 23 ("Alejandro Copado of CCC said: 'Escalation sent to Wells Fargo to

17   inquire about status of file.  Informed that addition docs were needed.'").  Plaintiff offers Exhibit

18   18 to prove the truth of the matter asserted, i.e., that his loan modification application was under

19   review after February 9, 2012.  *See* Opp'n at 7 (citing Faulks Decl. ¶ 39 (relying on Exhibit 18 to

20   show "on February 29, 2012, CCC submitted [his] lease agreement to Wells Fargo"));  Faulks

21   Decl. ¶ 41 ("Based on my review of CCC's phone Calls and Info from CCC, it appears that CCC

22   emailed Wells Fargo the information I faxed them on April 13, 2012.").  The statements contained

23   in Exhibit 18 are hearsay.

24           But "at summary judgment a district court may consider hearsay evidence submitted in an

25   inadmissible form, so long as the underlying evidence could be provided in an admissible form at

26   trial, such as by live testimony."  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098,

27   1110 (9th Cir. 2016).  Even if Exhibit 18 itself is not admissible, it is possible that Plaintiff could

28   offer the facts underlying this Exhibit in an admissible form at trial, for instance, through business

United States District Court
Northern District of California

9

1    records or direct testimony.  *See, e.g.*, Fed. R. Evid. 803(6).  For the same reason, the Court may

2    consider Exhibit 18 even if it violates the best evidence rule.  *See* Fed. R. Civ. P. 1002; *Hughes v.*

3    *United States*, 953 F.2d 531, 543 (9th Cir. 1992) (affidavit may be considered on summary

4    judgment despite hearsay and best evidence rule objections where facts underlying the affidavit

5    would be admissible as evidence even if the affidavit itself was not).

6         Wells Fargo's objection that Exhibit 18 lacks foundation is also without merit.  "To satisfy

7    the requirement of authenticating or identifying an item of evidence, the proponent must produce

8    evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R.

9    Evid. 901(a).  "[A]n inquiry into authenticity concerns the genuineness of an item of evidence, not

10   its admissibility."  *Orr*, 285 F.3d at 776; *see Alexander Dawson, Inc. v. N.L.R.B.*, 586 F.2d 1300,

11   1302 (9th Cir. 1978) ("The issue for the trial judge under Rule 901 is whether there is prima facie

12   evidence, circumstantial or direct, that the document is what it is purported to be.  If so, the

13   document is admissible in evidence.").  A proponent may authenticate a document by offering

14   "[t]estimony that an item is what it is claimed to be."  Fed. R. Evid. 901(b)(1).  As noted above,

15   Plaintiff testified that he created Exhibit 18.  *See* Faulks Dep. at 62:2-6.  This testimony satisfies

16   Rule 901's authentication requirement.  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 n.8

17   (9th Cir. 2002) ("'A document can be authenticated [under Rule 901(b)(1)] by a witness who

18   wrote it, signed it, used it, or saw others do so.'" (quoting 31 Wright & Gold, Federal Practice and

19   Procedure: Evidence § 7106, 43 (2000); edits in *Orr*)).

20        In short, because it is possible that the facts underlying Exhibit 18 could be admissible at

21   trial, the Court OVERRULES Wells Fargo's objections to it.

22   **C.    Exhibit 19**

23        Exhibit 19 to the Faulks Declaration purports to be a report written on CCC letterhead and

24   prepared for Plaintiff by Alejandro Copado, a "Certified Credit and Housing Counselor with

25   CCC's Housing Education Program."  *See* Faulks Decl., Ex. 19 at 1, 4.  Plaintiff describes this

26   Exhibit as a "summary of every interaction [he] had with CCC and every action CCC took on [his]

27   behalf."  Faulks Decl. ¶ 39.  It is not signed by Mr. Copado.  *See* Ex. 19.  Wells Fargo objects to

28   Exhibit 19 on the grounds of lack of personal knowledge of the statements made therein, hearsay,

10

1    and lack of foundation.  Reply at 4 (citing Fed. R. Evid. 602, 801, 802, 901).  Wells Fargo

2    specifically points to an entry dated May 15, 2012:

3         During a review with Brian at Wells Fargo of all CHA files we
          reviewed client's file.  Brian sent email of documents needed before
4         sale date of 5/17HPS COLOSS PROCESSING MISSING INCOME
          DOCUMENTS
5         1. LEASE AGREEMENT (UPDATED)
          (RCVD 1/16, EXPIRED 12/2011)
6         2. 4506-T (B1&NBFM)
          3. 2010 TAX TRANSCRIPTS,(B1&NBFM)
7         Brian worked with Alejandro to get the sale date postponed in April
          and sent documents requested.  According to Brian they still need
8         the documents.  I emailed Brian back and advised it was sent by
          Alejandro on 4/13.  Will wait for response mam.

9

10   Ex. 19 at 2 (errors and capitalization in original).  Enrique Delgadillo, CCC's designated person

11   most knowledgeable, testified in his deposition that "mam" indicates that CCC Operations

12   Supervisor Mary Ann McCormick made that entry.  First Armstrong Decl., Ex. 6 (Delgadillo

13   Dep.) at 110:5-111:4.  He further testified that when he spoke to Ms. McCormick "about and what

14   she did, but that she d[idn]'t recall specifically."  *Id.* at 112:11-14.

15        The Court SUSTAINS Wells Fargo's objection to Exhibit 19.  "Rule 56(e) of the Federal

16   Rules of Civil Procedure requires that a proper foundation be laid for evidence considered on

17   summary judgment."  *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007).  The Ninth Circuit

18   "has consistently held that documents which have not had a proper foundation laid to authenticate

19   them cannot support a motion for summary judgment."  *Canada v. Blain's Helicopters, Inc.*, 831

20   F.2d 920, 925 (9th Cir. 1987).  Exhibit 19 lacks foundation because Plaintiff fails to provide an

21   affidavit from Mr. Copado attesting that he wrote the report.  *See Orr*, 285 F.3d at 777 (memo

22   submitted in opposition to motion for summary judgment lacked foundation because non-movant

23   failed to submit affidavit from memo's author stating he wrote the memo).  Exhibit 19 does not

24   state the basis for the statements contained in the report or even identify who made each statement.

25   Based on Mr. Delgadillo's testimony, entries marked by "mam" reference or were made by Mary

26   Ann McCormick.  *See* Delgadillo Dep. at 111:2.  But Plaintiff offers no testimony from Ms.

27   McCormick regarding her statements, and neither Mr. Delgadillo nor the report identify who made

28   the other statements contained in Exhibit 19.  There is no evidence that Mr. Delgadillo possesses

United States District Court
Northern District of California

1    personal knowledge of the statements or the document's creation.  Plaintiff also lacks the personal

2    knowledge required to authenticate Exhibit 19's contents, as there is no evidence suggesting he

3    personally participated in the document's creation.  *See Bias*, 508 F.3d at 1224 ("The documents

4    must be authenticated and attached to a declaration wherein the declarant is the 'person through

5    whom the exhibits could be admitted into evidence.'" (quoting *Hal Roach Studios, Inc. v. Richard*

6    *Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir. 1990))).

### DISCUSSION

8         Wells Fargo moves for summary judgment on each of Plaintiff's claims: promissory

9    estoppel, intentional misrepresentation, negligent misrepresentation, negligence, intentional

10   infliction of emotional distress, and conversion.

**A.    Promissory Estoppel**

12        In California, there are four elements to a promissory estoppel claim: "(1) a promise, (2)

13   reasonable and (3) foreseeable reliance by the promisee, and (4) injury to the promisee."  *Graham-*

14   *Sult v. Clainos*, 756 F.3d 724, 749 (9th Cir. 2014) (citing *U.S. Ecology, Inc. v. California*, 129 Cal.

15   App. 4th 887, 901 (2005)).

16        Wells Fargo attacks the first two elements of Plaintiff's promissory estoppel claim.

17   Specifically, Wells Fargo argues summary judgment is proper because (1) Wells Fargo fulfilled

18   any promises it made in the February, October, and December 2011 letters; (2) Plaintiff's reliance

19   on the promises in those letters was not reasonable beyond February 9, 2012; and (3) Wells Fargo

20   representative Saavedra did not promise to postpone the foreclosure sale or reinstate Plaintiff's last

21   loan modification.  Mot. at 7-12.

22        1.    <u>Wells Fargo's Promises</u>

23        The Court first addresses Wells Fargo's written promises before turning to Saavedra's

24   voicemail.

25             a.    *Letters*

26        On February 16, 2011, Wells Fargo sent Plaintiff a letter acknowledging his request for

27   HAMP assistance and representing that "no further foreclose sale will be conducted and you will

28   not lose your home during the HAMP evaluation."  McNeal Decl., Ex. 2; Faulks Decl., Ex. 3.

United States District Court
Northern District of California

Wells Fargo made the same representation in a letter dated October 10, 2011. McNeal Decl., Ex. 11; Faulks Decl., Ex. 8. On October 11, 2011, Wells Fargo sent Plaintiff another letter informing Plaintiff that it was in the process of reviewing his application for HAMP assistance and stated that "a foreclosure sale will not be held and you will not lose your home" during the review process. *See* McNeal Decl., Ex. 11; Faulks Decl., Ex. 9.

On December 16, 2011, Wells Fargo requested additional documents, including an updated lease agreement, from Plaintiff and gave him until January 22, 2012 to submit them. McNeal Decl., Ex. 14. Wells Fargo stated that it would render its decision within 30 days of the receipt of documents and that, again, "a foreclosure sale will not be held and you will not lose your home during this time period." *Id.* On January 23, 2012, Wells Fargo notified Plaintiff that it had not received the required documents and extended the deadline for Plaintiff to submit them to February 7, 2012. *Id.* ¶ 17 & Ex. 15 at 84-85. Plaintiff did not send the updated lease agreement to Wells Fargo until February 28, 2012. *Id.* ¶ 24 & Ex. 20. In the meantime, Wells Fargo notified Plaintiff on February 9, 2012 that because Plaintiff did not submit the requested documents, Wells Fargo was unable to offer him a HAMP modification. *Id.* ¶ 19 & Ex. 17. In that letter, Wells Fargo stated that "efforts to collect any amounts due on your loan will resume." *Id.*, Ex. 17.

Following each promise not to sell the Property, Wells Fargo informed Plaintiff that his request was denied or deemed withdrawn and that efforts to collect the debt would continue. *See id.*, Exs. 8, 11, 17; Faulks Decl., Exs. 4, 10. It is undisputed the Property was sold on May 17, 2012 (McNeal Decl., Ex. 25), after Wells Fargo denied a HAMP modification or deemed Plaintiff's applications withdrawn. Moreover, the letters emphasize that the HAMP application process does not signal an end to Wells Fargo's efforts to collect the debt, and Wells Fargo's promises not to sell the Property were not open-ended. On the contrary, the promises were limited to a specific time period, that is, the period of time it would take Wells Fargo to review Plaintiff's application.

While Plaintiff does not challenge the fact Wells Fargo sold the Property after the deadline it gave him, Plaintiff challenges Wells Fargo's "narrow" approach of considering whether Wells Fargo fulfilled the promises it made in each letter. Opp'n at 8. He urges the Court to consider

13

1    Well Fargo's "general promise" that it would not foreclose on Plaintiff's home while it was

2    reviewing the Loan for a HAMP modification.  *Id.*  In support of his argument, Plaintiff relies on

3    the HAMP Handbook for Services of Non-GSE Mortgages version 3.4 (the "HAMP Handbook").

4    *See id.* at 9; *see* First Armstrong Decl., Ex. 8 (excerpts of the HAMP Handbook); Second

5    Armstrong Decl., Ex. 4 (page 66 of the HAMP Handbook).  Guideline 3.1.1 states in part that "[a]

6    servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure sale unless and

7    until at least one of the following circumstances exists: [] The borrower is evaluated for HAMP

8    and is determined to be ineligible for the program[.]"  First Armstrong Decl., Ex. 8 at 118.[3]

9    Guideline 3.3 provides that "[w]hen a borrower submits a request for HAMP consideration after a

10   foreclosure sale date has been scheduled and the request is received no later than midnight of the

11   seventh business day prior to the foreclosure sale date (Deadline), the servicer must suspend the

12   sale as necessary . . . ." *Id.* at 119; Opp'n at 9.  Plaintiff thus contends "the more appropriate

13   analysis is to determine that Wells Fargo's promises not to foreclose while a HAMP loan

14   modification is pending apply to each and every one of Wells Fargo's loan modification

15   application reviews and not the particular review each promise was made during."  Opp'n at 9.

16       The Court disagrees with Plaintiff's contention that Wells Fargo's "general promise" is

17   sufficient to withstand summary judgment.  "A promise is an indispensable element of the

18   doctrine of promissory estoppel."  *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 226 (2011),

19   *as modified* (Feb. 9, 2011) (internal quotation marks and edits omitted).  The doctrine of

20   promissory estoppel cannot apply where the plaintiff fails to "show[] that a promise had been

21   made upon which the complaining party relied to his prejudice[.]"  *Garcia v. World Sav., FSB*,

22   183 Cal. App. 4th 1031, 1044 (2010) (internal quotation marks omitted).  "The promise must, in

23   addition, be clear and unambiguous in its terms."  *Id.*

24       There is no evidence that Wells Fargo clearly and unambiguously promised not to sell the

25   Property after February 9, 2012.  On the contrary, Wells Fargo stated in the February 9 letter that

26

27   _____

     [3] For consistency's sake, pin citations to the HAMP Handbook refer to Wells Fargo's page

28   numbering and not the pages of the Handbook itself.

United States District Court
Northern District of California

"[b]ecause you have withdrawn your request for assistance under the Home Affordable Modification Program (HAMP) by not returning the required documents, efforts to collect any amounts due on your loan will resume." McNeal Decl., Ex. 17; Faulks Decl., Ex. 14. Plaintiff does not point to any letters or correspondence after February 9, 2012 in which Wells Fargo promised not to proceed with the foreclosure sale. "The absence of concrete factual detail as to the alleged promise undermines [P]laintiff's allegation." *Dupre v. Mountain W. Fin. Inc.*, 2014 WL 3406510, at *4 (C.D. Cal. July 10, 2014). Moreover, Wells Fargo's promises not to sell the Property were contingent on its review of Plaintiff's Loan for a HAMP modification. *See* McNeal Decl., Exs. 5, 11 ("[N]o further foreclosure sale will be conducted and you will not lose your home *during the HAMP evaluation*." (emphasis added)); Faulks Decl., Exs. 3, 8 (same). There is no evidence Wells Fargo promised to refrain from selling the Property under any other circumstance.

There are also no facts indicating Wells Fargo was reviewing the Loan for a HAMP modification after February 9, 2012, let alone as of May 17, 2012. Plaintiff contends his Loan was under active review because (1) Wells Fargo's servicing notes on May 8, 2012 stated the Loan is currently under "mod review"; (2) Plaintiff and CCC repeatedly faxed and emailed Wells Fargo documents after Wells Fargo's February 9, 2012 denial; (3) Wells Fargo agreed to postpone the initial foreclosure sale after CCC contacted it; and (4) Wells Fargo reached out to CCC on May 15, 2012 to request the same documents CCC had previously sent to Wells Fargo on April 13, 2012. Opp'n at 7-8.

Robert Ferguson, Wells Fargo's person most knowledgeable about the Loan, explained Wells Fargo's loan modification active review process during his deposition.[4] *See* Declaration of Daniel A. Armstrong ("Second Armstrong Decl."), Ex. 2 ("Ferguson Dep."), Dkt. No. 134-1. According to Ferguson, a borrower first communicates with collections because they are in or shortly will be in default. *Id.* at 87:19-22. Next, a collections representative interviews the borrower and asks questions about the borrower's intention with the property and financial

---

[4] Plaintiff offers no evidence contradicting Mr. Ferguson's description of the loan modification review process.

United States District Court
Northern District of California

condition. *Id.* at 87:23-25. Based on a cursory review of this information, the collections representative determines whether the loan should be referred to the loss mitigation department. *Id.* at 88:1-6. Loss mitigation then reviews the borrower's information and requests additional information from the borrower. *Id.* at 88:7-9. This leads to "a situation in which the loan is in active review." *Id.* at 88:11-12; *see id.* at 89:3-4 ("Once the time period for the request for additional information passes, the loans are reviewed.").

Even under Plaintiff's "general" approach, there is no evidence that Plaintiff's Loan was in active review after February 9, 2012 or as of May 17, 2012. There is no evidence that a Wells Fargo representative interviewed Plaintiff after the February 9 denial. Further, there are no facts that Wells Fargo postponed the foreclosure sale in response to a HAMP review and not for some other reason. Similarly, that Plaintiff and CCC sent Wells Fargo and Wells Fargo requested additional documents after February 9, 2012 does not indicate that Plaintiff's Loan was in fact under active review. Mr. Ferguson explained that an active review of a loan modification application is only one of several reasons for Wells Fargo to request additional documents. *See id.* at 84:24-86:4. For instance, "[t]he borrower could be being asked to provide documents in order to restart the process." *Id.* at 86:11-12; *see id.* at 85:8-11. Wells Fargo could also request additional documents if a borrower does not appeal a denial of a loan modification and instead seeks "to prove that there is a material change in their circumstances from the last decision on the merits." *Id.* at 85:22-86:4. Nothing in the record suggests that Wells Fargo's April 13 request for documents was in response to an active review of Plaintiff's Loan and not an attempt to restart the loan modification application process. Although "document collection coincides with this initial opening of the loss mitigation work station for active review"[5] (*id.* at 88:20-22), an open loss mitigation work station is not an indication that a loan application is in active review (*id.* at 90:7-9). It is only "once the time period for the request for additional information passes[ that] the loans are reviewed." *Id.* at 89:3-4.

---

[5] The loss mitigation work station is "a section of [Wells Fargo's] mortgage service platform." Ferguson Dep. 90:2-5.

16

The only evidence Plaintiff identifies to support his contention the Loan was under active review as of May 17, 2012 is a May 8, 2012 processing note that reads:

```
05/08/12  09:26:44 JID  *** CHECKED STATUS OF LOAN DUE TO PENDING SALE ***
                        RECOMMENDATION: LOAN IS CURRENTLY UNDER MOD REVIEW
                        PROCEED WITH FORECLOSURE ACTION ON WACHOVIA
                        2ND AT THERE IS ENOUGH EQUITY.
                        PENDING BID APPROVAL, BID AND HAMP CERT UPLOADED
                                    AUTO COMMITTED 5/8/12
```

Hymanson Decl., Ex. 3; *see* McNeal Decl., Ex. 24 at 125 (same).[6]  This note does not contain a clear and ambiguous promise not to sell the Property; on the contrary, it states "proceed with foreclosure action[.]"  *Id.* (both).  Coupled with the lack of facts indicating an initial interview took place or that Wells Fargo requested documents because Plaintiff's Loan was in active review and not some other reason, no reasonable jury could conclude that Wells Fargo was actively reviewing the Loan for a modification after February 9, 2012.[7]

        b.    *Voicemail*

Wells Fargo also argues Saavedra's voicemail to Plaintiff does not constitute a promise. On February 20, 2012, Saavedra left the following voicemail for Plaintiff:

> Hey Larry, it's Justin calling from Wells Fargo.  I noticed you were having a little trouble getting ahold of your assigned representative, so what I wanted to do is: Even though I'm not going to be handling your loan, I want to go ahead and initiate an interview so we can get the ball rolling on the process.  I know that, you know, playing phone tag is probably not the most desirable scenario, so in this case, I wanted to kind of act as a liaison between you and Cynthia [Boyd, Plaintiff's Home Preservation Specialist],  as much as possible, and then I'll contact Cynthia and let her know you're still trying to reach 'em, and we'll get an interview started.  So if you call me back – I'm here again tomorrow too 8:00 A.M. to 5:00 P.M. central standard time – I'll be happy to get that process reinstated so we can get the ball rolling on this again.  All right, Mr. Faulks?

---

[6] Neither party clarifies whether "mod review" also means "active review."

[7] Wells Fargo also argues that "[t]he May 8, 2012 note . . . suggests nothing more than that the foreclosure team member who entered the note left out the word 'IF' while making their 'recommendation' that the bank proceed on the second lien."  Reply at 8.  The Court declines to speculate on Wells Fargo's unsupported explanation of a typographical error.

Thanks.  Have a good one. Bye.

First Armstrong Decl., Ex. 5 (certified "Saavedra Tr.") at 82; *see* Faulks Decl., Ex. 16 (Plaintiff's uncertified transcript).  Wells Fargo contends Saavedra's message does not constitute a clear and unambiguous promise to reinstate the loan modification application; rather, "[a]t best, the message was an attempt to assist in reinstating communications with [Plaintiff's] assigned representative." Mot. at 12.  As such, Wells Fargo maintains "Plaintiff . . . could not have reasonably relied on Saavedra's message to assume that his December loan modification review was, in fact, revived along with a new foreclosure sale hold."  *Id.*

No reasonable trier of fact could find Saavedra's voicemail constituted a promise that Wells Fargo would not sell the Property.  Nor did Saavedra state Plaintiff's Loan is under active review; on the contrary, he stated that he would like to "get an interview started" and "get that process reinstated so we can get the ball rolling again."  Saavedra Tr. at 82.  As Mr. Ferguson testified, the active review process *starts* with an interview.  Ferguson Dep. at 87:17-88:6. Plaintiff offers no evidence to the contrary.  Plaintiff contends a "more plausible explanation for these statements is that Mr. Saavedra was referring to reinstating the loan modification application process."  Opp'n at 10.  Even accepting Plaintiff's interpretation, a reasonable jury could not conclude that offering to reinstate the application process constituted a promise by Wells Fargo not to sell the Property.  Finally, there is no evidence that Plaintiff contacted either Saavedra or his single point of contact, Boyd, to schedule an interview, or that an interview took place.

c.  *Summary*

There is no evidence that Wells Fargo clearly and unambiguously promised to postpone foreclosure proceedings on the Property, or that it was actively reviewing the Loan for a modification at any point after the February 9, 2012 denial.  Thus, there are no facts to allow a reasonable jury to conclude that Wells Fargo did not fulfill a promise to Plaintiff not to sell the Property.

2.  Reasonable and Foreseeable Reliance

Under the doctrine of promissory estoppel, "[a] promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his

promise, if injustice can be avoided only by its enforcement." *Garcia*, 183 Cal. App. 4th at 1041. In other words, "[p]romissory estoppel binds a promisor 'when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement.'" *Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 944, (2014) (quoting *Garcia*, 183 Cal. App. 4th at 1041).

To the extent the February 9 denial letter could be read to contain any promise by Wells Fargo not to sell the property after that date, Wells Fargo argues it was unreasonable for Plaintiff to rely on such a promise.  Mot. at 10.  Wells Fargo points to the statement in its February 9 letter that "[b]ecause you have withdrawn your request for assistance . . . efforts to collect any amounts due on your loan will resume." *Id.* at 10-11 (citing McNeal Decl. ¶ 18 & Ex. 17); *see* Faulks Decl., Ex. 14.  Given this statement, Wells Fargo contends it was "entirely unreasonable for Plaintiff to assume the foreclosure sale hold was still in place after . . . February 9, 2012." *Id.* at 11.

In *Chang v. Wachovia Mortgage, FSB*, 2012 WL 3235775 (N.D. Cal. Aug. 6, 2012), the court granted summary judgment in favor of the defendants on the borrower's promissory estoppel claim. *Id.* at *4-6.  The borrower had applied for a loan modification, which the defendants denied in a letter. *Id.* at *5.  That letter further stated "that during our review of your situation, [defendants] suspended the foreclosure process.  The foreclosure process against the property will now resume." *Id.* (internal quotation marks omitted).  The court found that "[i]f, after receiving the[] letter[], [the borrower] believed that her modification application was still under review and the foreclosure sale would be postponed further, her belief was unforeseeable and unreasonable. Such reliance cannot support a claim for promissory estoppel." *Id.*

Similarly, Wells Fargo's February 9, 2012 letter informed Plaintiff that "efforts to collect any amounts due on your loan will resume."  McNeal Decl. Ex. 17; Faulks Decl., Ex. 14.  At this point, it was unreasonable for Plaintiff to believe that Wells Fargo would not proceed with the foreclosure process.  There is no evidence that Wells Fargo otherwise made a clear and unambiguous promise not to foreclose on the Property after February 9, 2012.

Plaintiff attempts to distinguish *Chang* on the basis that he, unlike the borrower in *Chang*,

United States District Court
Northern District of California

19

has offered evidence that his Loan was still under review.  Opp'n at 9.  The Court disagrees.  In *Chang*, the borrower offered a delinquency record made by the defendant which stated "GATHERING DETAILS ON RFD & FNCLS TO FURTHER RVEW SITUATION . . . NO FCL SCHEDULED SALE DATE."  2012 WL 3235775, at *6 (edits in original; internal quotation marks omitted).  The borrower contended this showed her loan was under review.  *Id.*  The court rejected this argument, as the borrower "ha[d] offered no evidence to suggest that these statements were actually conveyed to her or that this record show[ed] that [d]efendant had committed to reconsidering her modification application."  *Id.*  Likewise, Plaintiff fails to show that he was aware of the May 8, 2012 note prior to the foreclosure sale such that he could reasonably and foreseeably rely on it.

Moreover, there is no evidence that Wells Fargo caused Plaintiff to engage in conduct he otherwise would not have taken—a necessary element of his promissory estoppel claim.  *See Garcia*, 183 Cal. App. 4th at 1041 ("The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted."  (internal quotation marks omitted)); *id.* at 1041-43 (finding detrimental reliance where appellants obtained high interest loan where they "might have obtained a loan on more favorable terms at a later time had they not been faced with the need to move quickly to cure the default on the [] property.  At a minimum, appellants could have borrowed a lesser amount had they known that respondent did not intend to delay the foreclosure and that the [] property was already lost."); *Sohal v. Fed. Home Loan Mortg. Corp.*, 2012 WL 6044817, at *10 (N.D. Cal. Dec. 5, 2012) ("[T]here is no evidence that [the d]efendants asked the [p]laintiffs to forego any particular course of conduct as a pre-requisite to negotiations" for a loan modification.); *Panaszewicz v. GMAC Mortg., LLC*, 2013 WL 3956355, at *4 (N.D. Cal. July 29, 2013) (on motion to dismiss, finding no detrimental reliance where defendant's "statement . . . did not effect any change in [p]laintiff's conduct or compel her to abandon her legal recourse").  Plaintiff declares that "[l]eading up to the foreclosure sale [he] considered selling the [the Property] but [he] did not call a realtor, or get it appraised because I was confident that I would qualify for a loan modification."  Faulks Decl. ¶ 45.  He "also could

20

have asked [his] family or friends for money to try to catch up with [his] payments, however at all times [he] remained optimistic that [he] was going to qualify for a loan modification." *Id.* His "optimism stemmed from [his] interactions with CCC and the fact that Wells Fargo told [him] to submit [his] documents and that they would properly review [him] for a loan modification." *Id.* "A mere hopeful expectation cannot be equated with the necessary justifiable reliance." *Aceves*, 192 Cal. App. 4th at 227 (internal quotation marks and edits omitted).  As discussed above, Wells Fargo's requests for documents are not necessarily a sign that a loan is in active review, let alone a sign of a borrower's chances of qualifying for a modification, and there is no evidence that Wells Fargo otherwise informed Plaintiff that he would likely qualify for a loan modification.

      3.    <u>Summary</u>

      A reasonable jury could not conclude that Plaintiff reasonably relied on Wells Fargo's clear and unambiguous promise not to sell the Property after February 9, 2012.  Accordingly, the Court GRANTS summary judgment in favor of Wells Fargo on Plaintiff's promissory estoppel claim.

**B.**      **Intentional and Negligent Misrepresentation**

      "'The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage.'"  *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014) (quoting *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996)).  "The elements of a claim for negligent misrepresentation are nearly identical.  Only the second element is different, requiring the absence of reasonable grounds for believing the misrepresentation to be true instead of knowledge of its falsity."  *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166 (2016), *review denied* (July 27, 2016).  "Instead, to plead negligent misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds for believing the representation to be true."  *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *11 (N.D. Cal. Nov. 11, 2016) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009)).

      Plaintiff no longer relies on his allegations that Wells Fargo still needed documents for

21

United States District Court
Northern District of California

1    Plaintiff's loan modification application before the May 17, 2012 sale date and that Wells Fargo

2    calculated Plaintiff's gross monthly income to be $375 to state his misrepresentation claims.

3    Opp'n at 11-12.  Plaintiff maintains that Wells Fargo made the following misrepresentations: (1)

4    Plaintiff would not be foreclosed on while his loan modification application was pending; (2)

5    Wells Fargo had not received Plaintiff's 4506-T as of December 23, 2011; and (3) Wells Fargo

6    had not received documents when in fact it had.  *Id.* at 10-11.

7         1.    Pending Loan Modification Application

8         Wells Fargo argues it fulfilled its representations made in its February, October, and

9    December 2011 letters that it would not sell the Property such that "[a]t the time of the sale on

10   May 17, 2012, there was no outstanding representation by Wells Fargo that it would be

11   postponed."  Mot. at 13.  As discussed above, the record shows Wells Fargo did not sell the

12   Property while it was reviewing Plaintiff's loan modification applications.  It did so on May 12,

13   2012, after it notified Plaintiff on February 9, 2012 that it considered his application for a HAMP

14   modification withdrawn and would resume efforts to collect the debt.  Plaintiff does not offer any

15   evidence to the contrary, nor does he point to facts to create a genuine dispute that his Loan was

16   under active review at any time after February 9, 2012.  Given this absence of evidence, there is

17   no genuine dispute that Wells Fargo intentionally or negligently misrepresented that it would not

18   sell the Property starting May 17, 2012.

19        2.    Receipt of Plaintiff's 4506-T Form

20        Wells Fargo argues summary judgment is proper as to this alleged misrepresentation on

21   two grounds.  First, it contends there is no evidence Wells Fargo misrepresented it did not receive

22   Plaintiff's updated IRS form 4506-T before December 23, 2011.[8]  Mot. at 14.  Wells Fargo asserts

23   that Plaintiff's own notes outlining the 4506-T forms he submitted to Wells Fargo demonstrates

24   that as of December 23, 2011, Wells Fargo had not received Plaintiff's updated 4506-T form.  *Id.*;

25

26   _____

     [8] In his Complaint, Plaintiff alleges Wells Fargo also made this misrepresentation on May 15,
27   2012.  TAC ¶ 39(a)(iv).  This alleged misrepresentation relates to Plaintiff's contention that Wells
     Fargo still needed documents for Plaintiff's loan modification application before the May 17, 2012
28   sale date.  *See* TAC ¶ 44.  As Plaintiff concedes the May 15, 2012 misrepresentation is not a
     viable claim (Opp'n at 11-12), the Court does not address it.

United States District Court
Northern District of California

*see* First Armstrong Decl., Ex. 10.  The evidence here establishes Wells Fargo received Plaintiff's 4506-T form in September 2011, during a previous review.  Mot. at 14.  Wells Fargo's October 18, 2011 letter informed Plaintiff he needed to resubmit updated documents if more than 30 days had elapsed and the review was not completed or extended.  *Id.*  Second, Wells Fargo argues Plaintiff cannot show he relied on or was damaged by this alleged misrepresentation.  *Id.*

There is evidence that Wells Fargo received Plaintiff's 4506-T form in September 2011.  *See* First Armstrong Decl., Ex. 10; Hymanson Decl., Ex. 2 (September 13, 2011 note that "4506-T DOES NOT NEED TO BE SUBMITTED DUE TO TRANSCRIPTS ALREADY IN FILE" (capitalization in original)).  Wells Fargo informed Plaintiff that it "relies on [its] borrowers to provide [it] with complete and accurate financial information reflecting current status within the last 30 days."  McNeal Decl., Ex. 12.  To that end, Plaintiff testified in his deposition that he had conversations with Wells Fargo during which Wells Fargo told him that his documents were too old and that he need to resubmit them.  Faulks Dep. at 131:7-132:10.  But the record does not show that Plaintiff provided Wells Fargo with an updated 4506-T between September 2011 and December 23, 2011, when Wells Fargo wrote Plaintiff to tell him that it still had not received his form.

Rather than pointing to evidence that Wells Fargo timely received Plaintiff's updated 4506-T, Plaintiff focuses on *why* Wells Fargo required Plaintiff to resubmit the form.  Plaintiff argues "Wells Fargo provides no explanation for why a 4506-T . . . needs to be 'freshly' submitted after 30 days."  Opp'n at 12.  No explanation is necessary.  Plaintiff's intentional and negligent misrepresentation claims do not challenge Wells Fargo's policies, only its statements as to whether or not it received the requested documents.  The issue is not whether Plaintiff submitted a 4506-T form; Wells Fargo does not contest that it received the original form in September 2011.  Rather, the question is whether Plaintiff provided an updated copy of it as of December 23, 2011 when Wells Fargo represented it had not received it.  *See* McNeal Decl., Ex. 14.  Given the lack of evidence that Plaintiff sent Wells Fargo his updated 4506-T form as was requested by Wells Fargo as a condition for continuing with the loan modification process, a reasonable jury could not conclude that Wells Fargo misrepresented that it had not received the 4506-T on December 23,

1    2011, either intentionally or negligently.[9]

2        3.    Receipt of Documents

3        Wells Fargo argues it is entitled to summary judgment on Plaintiff's claim that on

4    September 13, 2011 and May 15, 2012,[10] "'Wells Fargo misrepresented that Plaintiff did not

5    provide the documents requested even though Plaintiff submitted all documents requested.'"  Mot.

6    at 18 (quoting TAC ¶ 54).  Wells Fargo incorporates its arguments regarding Plaintiff's alleged

7    misrepresentations regarding his 4506-T form, as well as Plaintiff's allegation that "Brian," a

8    Wells Fargo representative told Plaintiff Wells Fargo still needed documents that Plaintiff and

9    CCC had already submitted.  *Id.*

10       Wells Fargo argues Plaintiff failed to timely submit a Social Security award letter by

11   September 13, 2011.  Reply at 12.  As noted earlier, Wells Fargo informed Plaintiff on July 27,

12   2011 that he needed to submit his 4506-T form and Social Security Verification.  McNeal Decl.,

13   Ex. 4; Faulks Decl., Ex. 5.  Wells Fargo advised Plaintiff on August 27, 2011 that it had yet to

14   receive the requested documents.  McNeal Decl., Ex. 6.  Wells Fargo's September 8, 2011 Loss

15   Mitigation processing notes indicate that Wells Fargo sill needed "1. 2009 SIGNED AND

16   COMPLETE TAX RETURN(S) [AND] 2. AWARD LETTER FOR SOCIAL SECURITY

17   VERIFICATION(S)." Second Armstrong Decl., Ex. 3 (capitalization in original).  Wells Fargo's

18   September 13, 2011 notes indicate it received Plaintiff's tax transcript, but there is no indication it

19   received his Social Security Verification.  *See id.*  Thus, that day, Wells Fargo notified Plaintiff

20   that it could not offer him a HAMP modification because it had not received Plaintiff's

21   documents.  *Id.*, Ex. 8; *see also id.*, Ex. 12 at 75 (noting that "[o]n September 13, 2011, a letter

22   was sent advising your loan would be removed from retention review due to these documents not

23   being received.").

24       Plaintiff argues "there are clearly genuine issues of material fact regarding whether or not

25   _____

26   [9] Because a reasonable fact finder could not conclude that Wells Fargo made a misrepresentation,
     the Court does not consider Wells Fargo's argument that there are no facts that Plaintiff was
27   harmed by the misrepresentation.

28   [10] Again, Plaintiff "concedes he was not aware of this misrepresentation" that Wells Fargo still
     needed documents before the May 17, 2012 foreclosure sale.  Opp'n at 12.

United States District Court
Northern District of California

1    Wells Fargo claimed that it had not received documents when, in fact, it had." Opp'n at 13.  He

2    does not, however, offer evidence that he timely submitted his Social Security Verification.

3    Without facts indicating Plaintiff submitted the requested documents, a reasonable jury could not

4    find that Wells Fargo's statement that it was not in receipt of those documents was an intentional

5    or negligent misrepresentation.

6         4.    Summary

7         The Court GRANTS summary judgment in favor of Wells Fargo on Plaintiff's intentional

8    and negligent misrepresentation claims.

9    **C.    Negligence**

10        "In order to establish negligence under California law, a plaintiff must establish four

11   required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349

12   F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 275 (1990)).

13        1.    Duty

14        "'The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

15   establish a claim for negligence.'" *Aquino v. U.S. Bank Nat'l Ass'n*, 2016 WL 324373, at *3

16   (N.D. Cal. Jan. 27, 2016) (quoting *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d

17   1089, 1096 (1991)).  "Whether a duty of care exists is a question of law to be determined on a

18   case-by-case basis." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).

19        The Court previously found that Wells Fargo owed Plaintiff a duty of care.  First MTD

20   Order at 11-12.  Wells Fargo requests the Court reconsider that decision.  Mot. at 19; Reply at 13.

21   The Court declines to change its position.

22        "[A]s a general rule, a financial institution owes no duty of care to a borrower when the

23   institution's involvement in the loan transaction does not exceed the scope of its conventional role

24   as a mere lender of money." *Nymark*, 231 Cal. App. 3d at 1096.  But this "general rule" is not a

25   "sweeping conclusion that a lender *never* owes a duty of care to a borrower." *Newson v.*

26   *Countrywide Home Loans, Inc.*, 2010 WL 4939795, at *5 (N.D. Cal. Nov. 30, 2010) (emphasis in

27   original); *see Jolley v. Chase Home Fin.*, LLC, 213 Cal. App. 4th 872, 901 (2013), *as modified on*

28   *denial of reh'g* (Mar. 7, 2013) ("Even when the lender is acting as a conventional lender, the no-

1  duty rule is only a general rule.").  Rather,

2      [i]n California, the test for determining whether a financial
3  institution owes a duty of care to a borrower-client "involves the
balancing of various factors, among which are [1] the extent to
4  which the transaction was intended to affect the plaintiff, [2] the
foreseeability of harm to him, [3] the degree of certainty that the
5  plaintiff suffered injury, [4] the closeness of the connection between
the defendant's conduct and the injury suffered, [5] the moral blame
6  attached to the defendant's conduct, and [6] the policy of preventing
future harm."

7  *Nymark*, 231 Cal. App. 3d at 1098 (quoting *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958))

8  (brackets in *Nymark*).  These six factors are commonly known as the "*Biankanja* factors."

9      The Court previously recognized that California district courts were split as to whether

10  financial institutions owe borrowers a duty of care in the context of loan modification application.

11  First MTD Order at 11.  "Relying on *Nymark*, a number of cases have held that a financial

12  institution does not owe a borrower a duty of care because the loan modification process is a

13  traditional money lending activity."  *Id.* (citing *Settle v. World Sav. Bank, F.S.B.*, 2012 WL

14  1026103, at *8 (C.D. Cal. Jan. 11, 2012); *Rockridge Trust v. Wells Fargo, N.A.*, 2013 WL

15  5428722, at *36 (N.D. Cal. Sept. 25, 2013); *DeLeon v. Wells Fargo Bank N.A.*, 2011 WL 311376

16  (N.D. Cal. Jan. 28, 2011); *Ottolini v. Bank of Am.*, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19,

17  2011); *Coppes v. Wachovia Mortg. Corp.*, 2011 WL 1402878, at *7 (E.D. Cal. Apr. 13, 2011)).

18  "Other courts have concluded that a financial institution has exceeded its role as a money lender

19  once it accepts an application for a loan modification, and is thus subject to a standard of

20  reasonable care in handling the application."  *Id.* at 11-12 (citing *Rijhwani v. Wells Fargo Home*

21  *Mortg., Inc.*, 2014 WL 890016, at *16 (N.D. Cal. March 3, 2014); *Garcia v. Ocwen Loan Serv.,*

22  *LLC*, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010); *Trant v. Wells Fargo Bank, N.A.*, 2012

23  WL 2871642, at *6-7 (S.D. Cal. July 12, 2012); *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011

24  WL 1134451, at *7 (N.D. Cal. Sep. 11, 2013); *Avila v. Wells Fargo Bank*, 2012 WL 2953117, at

25  *12–*14 (N.D. Cal. July 19, 2012); *Chancellor v. One West Bank*, 2012 WL 1868750, at *13-14

26  (N.D. Cal. May 22, 2012)).  This split persists today.  *See Martinez v. Flagstar Bank, FSB*, 2016

27  WL 3906810, at *7 (E.D. Cal. July 19, 2016) (analyzing division and noting "[n]either the

28  California Supreme Court nor the Ninth Circuit has taken up th[e] question" of whether a financial

1    institution owes a borrower a duty of care in mortgage cases).

2        Wells Fargo argues that courts that have allowed a negligence claim against lenders have

3    done so based on the reasoning set forth in *Alvarez v. BAC Home Loan Servicing, L.P.*, 228 Cal.

4    App. 4th 941 (2014).  Mot. at 20.  Wells Fargo contends "[t]he *Alvarez* line of cases ignore a

5    fundamental rule of negligence[,]" namely, determine whether the plaintiff and defendant are in

6    privity.  *Id.*  Plaintiff does not respond to Wells Fargo's arguments except to say that he "interprets

7    that [prior] ruling to constitute the law of this case."  Opp'n at 14.

8        *Biakanja* concerned "whether [a] defendant [is] under a duty to exercise due care to protect

9    [a] plaintiff from injury and was liable for damage caused plaintiff by his negligence even though

10   they were not in privity of contract."  49 Cal. 2d at 648; *see Beacon Residential Cmty. Ass'n v.*

11   *Skidmore*, *Owings & Merrill LLP*, 59 Cal. 4th 568, 578 (2014) ("[T]he *Biankanja* factors 'inform

12   whether a duty of care exists between a plaintiff and defendant in the absence of privity[.]'"

13   (emphasis added)).  The California Supreme Court relied on *Biakanja*'s theory of negligence in

14   *J'Aire Corporation v. Gregory*, where it held that "[w]here a special relationship exists between

15   the parties, a plaintiff may recover for loss of expected economic advantage through the negligent

16   performance of a contract although the parties were not in contractual privity."  24 Cal. 3d 799,

17   804 (1979).

18       "By their terms, *J'aire* and *Biakanja* only apply where the parties are not in direct

19   contractual privity."  *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *5 (N.D. Cal.

20   Nov. 11, 2016).  Courts have nonetheless expanded the application of *J'aire*—and thus

21   *Biakanja*—to instances where the parties are in privity.  *See Aas v. Superior Court*, 24 Cal. 4th

22   627, 645 (2000) ("While the court in *J'Aire* purported only to address duties owed to persons not

23   in contractual privity with the defendant, courts subsequently have applied *J'Aire* to cases in

24   which privity did exist.  These courts have concluded that the reasoning of *J'Aire* is wholly

25   incompatible with a limitation of the cause of action to those instances in which the plaintiff and

26   defendant are not in privity[.]" (internal quotation marks and citation omitted)).  The *Aas* Court

27   neither approved nor disapproved of this expansion.  *See id.*; *R Power Biofuels, LLC*, 2016 WL

28   6663002, at *6 (N.D. Cal. Nov. 11, 2016) ("In the course of its analysis, the *Aas* Court noted that

*United States District Court*
*Northern District of California*

27

1    lower courts had expanded . . . *Biakanja* to circumstances where the parties were in privity, but did

2    not approve or disapprove of that expansion.").  The application of *Biakanja* to situations where

3    the parties are in privity includes foreclosure cases.  *See Alvarez*, 228 Cal. App. 4th at 948-49;

4    *Romo v. Wells Fargo Bank, N.A.*, 2016 WL 324286, at *8-10 (N.D. Cal. Jan. 27, 2016).

5        The Court thus disagrees with Wells Fargo's contention that it—and the other courts faced

6    with a negligence claim arising out of a foreclosure action—erred in applying the *Biakanja* factors

7    because the parties are in privity.  As such, the Court declines to grant summary judgment on the

8    ground that Wells Fargo did not owe Plaintiff a duty of care.

9            2.    Breach

10       Wells Fargo argues that even if it did owe Plaintiff a duty of care, it did not breach that

11   duty by failing to act reasonably.  Mot. at 21.  Specifically, Wells Fargo avers it "repeatedly

12   reviewed Plaintiff for a modification, postpon[ed] the foreclosure sale to provide Plaintiff time to

13   submit documents, extend[ed] deadlines when he repeatedly failed to do so[, and] made multiple

14   attempts to contact [] Plaintiff and have him correct errors with his submissions." *Id.*  Wells Fargo

15   further emphasizes that Plaintiff submitted over five modification applications in two years, two of

16   which Wells Fargo fully reviewed; Plaintiff nonetheless "simply failed to qualify." *Id.*

17       Plaintiff maintains "there are numerous facts which constitute genuine issues of material

18   fact regarding whether or not Wells Fargo acted reasonably." Opp'n at 14.  He asks

19

20                    was it reasonable for Wells Fargo to sell Plaintiff's Home while
                     Plaintiff was in the middle of an active loan modification
21                   application?  Was it reasonable for Wells Fargo's representatives to
                     send Plaintiff a letter via overnight mail four days before a due date
22                   for documents and to include within that letter an incorrect fax
                     number?  Was it reasonable for Wells Fargo to foreclose on a house
23                   that had significant equity just because Wells Fargo allegedly
                     determined that it was missing certain financial documents[?]

24   *Id.*  But as explained above, a reasonable jury could not find that Wells Fargo was actively

25   reviewing the Loan for a modification at the time of the foreclosure sale and that Wells Fargo did

26   not make intentional or negligent misrepresentations.  Nor is there evidence that Wells Fargo's

27   short deadline for Plaintiff to submit documents constitutes a breach; rather, Wells Fargo

28   requested those documents as part of its review Plaintiff's HAMP application.  Further, as

United States District Court
Northern District of California

28

1   discussed below, the record does not show Wells Fargo intentionally set a short deadline for

2   Plaintiff to submit documents.  As such, nothing in the record allows a reasonable finder of fact to

3   conclude that Wells Fargo breached its duty to Plaintiff.  Given this lack of evidence, the Court

4   GRANTS Wells Fargo's Motion for Summary Judgment on Plaintiff's negligence claim.

5   **D.       Intentional Infliction of Emotional Distress**

6           A plaintiff who seeks to prevail on a claim of intentional infliction of emotional distress

7   "must prove '(1) extreme and outrageous conduct by the defendant with the intention of causing,

8   or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

9   severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

10  distress by the defendant's outrageous conduct.'"  *Doe v. Gangland Prods., Inc.*, 730 F.3d 946,

11  960 (9th Cir. 2013) (quoting *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982)).  "A

12  defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually

13  tolerated in a civilized community.'"  *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th

14  Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009)).  "Whether a defendant's

15  conduct can reasonably be found to be outrageous is a question of law that must initially be

16  determined by the court; if reasonable persons may differ, it is for the jury to determine whether

17  the conduct was, in fact, outrageous."  *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007).

18          In his TAC, Plaintiff alleges Wells Fargo engaged in the following extreme and outrageous

19  conduct: (1) Wells Fargo made it "extremely difficult" for Plaintiff to timely submit all requested

20  information for his loan modification application by intentionally or recklessly omitting one digit

21  of the facsimile number to which Wells Fargo Executive Mortgage Specialist Jennifer Klute

22  instructed Plaintiff to send his documents (*see* Faulks Decl., Ex. 6); (2) Wells Fargo imposed an

23  unreasonably short, three-day deadline for Plaintiff to submit his documents; (3) Wells Fargo

24  continuously lost or misplaced Plaintiff's documents, miscalculated his income, and told Plaintiff

25  his application was incomplete; and (4) Wells Fargo made several misrepresentations including

26  that it would not foreclose on the Property and did not receive Plaintiff's 4506-T form and other

27  documents, "all the while knowing that Plaintiff was disabled."  TAC ¶¶ 78-81.

28          Wells Fargo argues there is no evidence it engaged in extreme and outrageous conduct.

United States District Court
Northern District of California

29

United States District Court
Northern District of California

1    Mot. at 22-24.  Wells Fargo contends there is no evidence that the facsimile number was

2    intentionally omitted and that this was nothing more than a typographical error.  Mot. at 23.

3    Further, Wells Fargo notes it twice extended the deadline for Plaintiff to return his documents to

4    August 26, 2011 and September 11, 2011.  *Id.* (citing McNeal Decl. ¶¶ 10, 12 & Exs. 4, 6).  It was

5    therefore "perfectly reasonable for Ms. Klute to assume that Plaintiff had most, if not all, of the

6    required documents ready to update and resubmit."  *Id.*  Indeed, Wells Fargo points to a

7    September 13, 2011 letter from Plaintiff, which included many of the documents.  *Id.* (citing First

8    Armstrong Decl., Ex. 9).

9           In response, Plaintiff argues that "Wells Fargo knowingly foreclosed on an elderly,

10   disabled, African-American man who was trying to keep possession of the home his parents had

11   purchased in 1962."  Opp'n at 14-15.  Plaintiff emphasizes he "had been trying to work with Wells

12   Fargo for years to make his loan payments affordable, and Plaintiff had significant equity in the

13   property."  *Id.* at 15.

14          "As a matter of law[,] foreclosing on property does not amount to the outrageous conduct

15   required to support a claim for intentional infliction of emotional distress."  *Ivey v. JP Morgan

16   Chase Bank, N.A.*, 2016 WL 4502587, at *6 (N.D. Cal. Aug. 29, 2016) (quoting *Aguinaldo v.

17   Ocwen Loan Servicing, LLC*, 2012 WL 3835080, at *7 (N.D. Cal. Sept. 4, 2012)); *see Gutierrez v.

18   Wells Fargo Bank, N.A.*, 2015 WL 5013309, at *3 (N.D. Cal. Aug. 24, 2015) ("[T]he act of

19   foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that

20   supports an intentional infliction of emotional distress claim." (internal quotation marks and edits

21   omitted)).  Plaintiff offers no evidence that Wells Fargo otherwise engaged in extreme or

22   outrageous conduct.  Rather than pointing to specific facts, Plaintiff contends "Wells Fargo's

23   characterization of Plaintiff's allegations as 'tired' simply highlights the fact that a genuine issue

24   of material fact exists as to Plaintiff's claim for intentional infliction of emotional distress."  *Id.*

25   But the record does not suggest that Wells Fargo intentionally omitted the last digit of the

26   facsimile number, nor is there evidence that Wells Fargo intended its allegedly unreasonable

27   deadline to cause Plaintiff emotional distress.  Further, as discussed above, Plaintiff fails to point

28   to provide evidence that Wells Fargo misrepresented that it would not sell the Property while

evaluating Plaintiff's Loan for a HAMP modification or that it had not received the documents it requested.

Given the lack of evidence that Wells Fargo's conduct exceeded the bounds of a civilized society, a reasonable jury could not find Wells Fargo engaged in extreme and outrageous behavior. Accordingly, the Court GRANTS Wells Fargo's Motion for Summary Judgment on Plaintiff's intentional infliction of emotional distress claim.

**E.      Conversion**

Plaintiff concedes the Court should grant summary judgment to Wells Fargo as to his sixth cause of action for conversion.  Opp'n at 1, 15.  Accordingly, the Court GRANTS Wells Fargo's Motion as to this Plaintiff's conversion cause of action.

<strong>CONCLUSION</strong>

For the reasons set forth above, the Court **GRANTS** Wells Fargo's Motion for Summary Judgment on each of Plaintiff's claims.[11]

The Court will issue a separate judgment.


**IT IS SO ORDERED.**


Dated: February 7, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

---

[11] Accordingly, the Court **DENIES AS MOOT** the parties' Stipulation to Continue Pre-Trial and Trial Dates.  *See* Dkt. No. 136.